UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BOURBON SALOON, INC.,<br>*appellant,*<br><br>versus<br><br>ABSINTHE BAR, LLC,<br>*appellee.* | CIVIL NO. 14-0395<br><br>Section G, Division 2<br><br>Judge Nannette Jolivette Brown<br><br>Magistrate Judge Joseph C. Wilkinson, Jr.<br><br><u>consolidated with</u> |
| ABSINTHE BAR, LLC,<br>*appellant,*<br><br>versus<br><br>BOURBON SALOON, INC.,<br>*appellee.* | CIVIL NO. 14-0398<br><br>**<u>this filing relates only to</u><br><u>Civil No. 14-0398</u>** |

On appeal from the
United States Bankruptcy Court
Eastern District of Louisiana
*In re Bourbon Saloon, Inc.,* No. 11518 "B"
Honorable Jerry A. Brown Presiding
——————————————————

**ORIGINAL BRIEF OF APPELLANT, THE ABSINTHE BAR, L.L.C.**
——————————————————

Andrew T. Lilly (**#32559**)
715 Girod Street
New Orleans, Louisiana 70130
telephone:    (504) 812-6388
facsimile:    (504) 539-4180
e-mail:       andrew@atlpllc.com

*Attorney for The Absinthe Bar, L.L.C.*

March 21, 2014

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ............................................................................ iii

JURISDICTIONAL STATEMENT .................................................................. 1

STANDARD OF REVIEW .............................................................................. 3

I.   Issues involving a) the construction the bankruptcy judge gave the prohibitory lease assumption provision in § 365(b)(1) of the Bankruptcy Code; and b) the bankruptcy judge's interpretation of the parties' consent judgment regarding BSI's cure of maintenance defaults. ............................................................................... 4

II.  Issues involving the bankruptcy judge's selective disregard for certain terms of the parties' consent judgment on cure. ................................................................. 5

III. Issues involving the construction given § 365(b)(1)(B) of the Bankruptcy Code, which makes BSI's payment of A-Bar's attorney's fees and other pecuniary damages a statutory prerequisite to lease assumption. ..................................................................... 6

IV.  Issues involving the bankruptcy judge's failure to require BSI to adequately assure its future performance of the lease, as required by § 365(b)(1)(C) of the Bankruptcy Code. ................................................................................................................... 6

V.   Issues involving the bankruptcy judge's disregard of the findings of the court-appointed construction referee; the appropriateness of the "substantial performance" standard in a contested lease assumption bankruptcy proceeding: ................................................. 6

NATURE OF THE CASE;
COURSE AND DISPOSITION OF PROCEEDINGS BELOW ......................................... 7

FACTS DIRECTLY RELEVANT TO ISSUES PRESENTED FOR REVIEW .................. 18

SUMMARY OF THE ARGUMENT .............................................................. 30

ARGUMENT ................................................................................................ 32

I.   The bankruptcy judge couldn't have interpreted the *Agreed Order* to effect lease assumption *in toto*; only one of the three requirements under § 365(b)(1) of the Bankruptcy Code was even mentioned in the agreement. ........................................... 32

II.  The bankruptcy judge shouldn't have interpreted the *Agreed Order* as a full-blown lease assumption agreement. Waiver principles have little place in bankruptcy proceedings and A-Bar's 2-year opposition of the lease assumption makes the bankruptcy judge's

acceptance of BSI's awkward, 11th hour "assumption by consent" argument factually, commercially, and practically unreasonable. ........................................................... 34

III. The *Agreed Order* was really just the parties' contractual definition of how BSI could accomplish § 365(b)(1)(A) cure; BSI's right to a cure finding depended entirely upon its satisfaction of three conditions. ............................................................... 37

IV. The *Agreed Order* establishes the type of "mutually-acceptable performance criteria" which the bankruptcy judge defined, in his 2005 *Crutcher-Tufts* ruling, as Louisiana Civil Code Article 1767 suspensive conditions. ........................................................ 39

V. As a matter of law, the bankruptcy judge had no basis to *sua sponte* undo the December 31, 2012 cure deadline in the parties' *Agreed Order*; settled law provides that the *Agreed Order* was not only the contract between the parties, it was also the bankruptcy court's order and a future-reaching injunction .................................................................. 41

VIII. The jurisprudential "substantial performance" or "substantial completion" standard the bankruptcy judge borrowed from Louisiana construction law has no application in the statutory world of bankruptcy lease assumption. The Bankruptcy Code and the *Agreed Order* both require cure of all defaults as a prerequisite to the approval of lease assumption; anything less and the debtor isn't entitled to assume. ........................... 43

IX. Neither lease termination nor eviction was before the bankruptcy judge; this was a contested lease assumption and the judge was guided exclusively by the three requirements in § 365(b)(1)(A)-(C); his appreciation of A-Bar's rights or motives as a landlord were immaterial in his decision to approve or deny lease assumption. ........ 46

X. A § 365(b)(1)(B) prerequisite to BSI's lease assumption was its compensation of A-Bar's pecuniary damages caused by BSI breach (attorney's fees and costs); lease assumption can't be approved without the payment of these damages, which run from the time of the bankruptcy petition until the time the lease assumption is approved. .................. 47

CONCLUSION ......................................................................................... 48

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Baton Rouge Oil and Chem. Workers Union v. Exxonmobil Corp.*, 289 F.3d 373 (5th Cir. 2002) ........................................................................................................ 43

*Chisholm v. Greenstein*, 876 F.Supp.2d 709 (E.D.La. 2012) ........................................ 43

*Chisom v. Jindal*, -- F.Supp.2d --, 2012 WL 3891594 (E.D.La. 2012) ............................ 43

*Durham Sch. Servs., L.P. v. Sojourner Truth Acad.*, 2012 WL 2133672 (E.D.La. 2012) 38

*In re Bowyer*, 916 F.2d 1056 (5th Cir. 1990) .................................................................. 4

*In re Consol. Companies, Inc.*, 185 B.R. 223 (E.D.La. 1995) ........................................ 3

*In re Crutcher-Tufts Res., Inc.*, 347 B.R. 189 (Bankr. E.D.La. 2005) ..................... 39, 40

*In re Diamond Mfg. Co., Inc.*, 164 B.R. 189 (Bankr. S.D.Ga. 1994) ............................ 37

*In re Nat'l Gypsum Co.*, 208 F.3d 498 (5th Cir. 2000) ............................................ 3, 33

*In re O'Neil Theatres, Inc.*, 257 B.R. 806 (Bankr. E.D. La. 2000) ................................ 34

*In re PRK Enterprises, Inc.*, 235 B.R. 597 (Bankr. E.D.Tex. 1999) .............................. 37

*In re Senioris Enterprises, Inc.*, 70 B.R. 79 (Bankr. N.D.Tex. 1987) ............................ 37

*In re Virgin Offshore USA, Inc.*, 2013 WL 4854312 (E.D.La. 2013) .............................. 3

*Matter of Delta Towers, Ltd.*, 924 F.2d 74, 76 (5th Cir. 1991) ...................................... 3

*Matter of Webb*, 954 F.2d 1102, 1103-1104 (5th Cir. 1992) ........................................ 3

*Morris v. Homco Intern., Inc.*, 853 F.2d 337, 343 (5th Cir. 1988) ................................ 47

*Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir. 1985) .............. 37

*Rutgers State University v. Martin Woodlands Gas Co.*, 974 F.2d 659 (5th Cir. 1992) .... 3

*Steptore v. Masco Construction Co.*, 643 So.2d 1213 (La.8/14/94) .............................. 38

*Texas Importing Co. v. Banco Popular de Puerto Rico*, 360 F.2d 582 (5th Cir. 1966) ... 33

*United States v. Int'l Brotherhood of Teamsters*, 998 F.2d 1101 (2d Cir. 1993) ............. 43

*United States v. Willowridge Estates*, 2013 WL 3489864 (E.D.La. 2013) ..................... 42

**Statutes**

11 U.S.C. § 365 ................................................................................................*passim*

11 U.S.C. § 102 ........................................................................................................ 33

28 U.S.C. § 1334 ....................................................................................................... 1

28 U.S.C. § 157 ......................................................................................................... 1

28 U.S.C. § 158 ....................................................................................................... 17

Federal Rules of Bankruptcy Procedure 8002 ............................................................. 2

Federal Rules of Bankruptcy Procedure 8009 ........................................................... 18

Federal Rules of Banruptcy Procedure 8010 ......................................................... 7, 18

Federal Rules of Bankruptcy Procedure 8013 ............................................................. 4

Louisiana Civil Code Article 1767 ................................................................... 5, 39, 40

Louisiana Civil Code Article 1773 ........................................................................... 41

Louisiana Civil Code Article 2046 ........................................................................... 38

**Other Authorities**

Alain Levasseur, "Effects of Conditional Obligations", *Louisiana Law of Obligations in General: A Precis*, CIVIL LAW PRECIS SERIES (Lexis Nexis 3d. ed. 2009) ..................... 41

iii

## JURISDICTIONAL STATEMENT

### I.   The bankruptcy court had jurisdiction over the lease assumption litigation.

The appealed orders concern BSI's motion in bankruptcy to assume a lease of A-Bar's commercial real estate. Lease assumption is a core proceeding arising under § 365 of the Bankruptcy Code and is properly considered by the bankruptcy judges. 28 U.S.C. § 157(b); 28 U.S.C. § 1334(b).

### II.   The bankruptcy judge had neither occasion nor jurisdiction to determine A-Bar's right to terminate the lease or seek eviction.

Although the Bankruptcy Code mandates premises turnover in certain instances of lease rejection, neither lease termination nor eviction was before the bankruptcy judge. The issue tried was whether BSI had entitled itself to assume a defaulted commercial lease. That issue was governed exclusively by § 365(b) of the Code and the terms of the parties' *Agreed Order*.[1] The bankruptcy judge's repeated discussion[2] of whether A-Bar was entitled to terminate the lease, evict its tenant, or even its desire to do these things, should be disregarded as jurisdictionally improper and unhelpful.

---

[1] Bankruptcy Record at 449 ("Bankr. R. _____") – *May 15, 2012 Agreed Order on Motion to Assume Lease*.
[2] Bankr. R. 593 – *October 11, 2013 Memorandum Opinion* at pp. 1, 11, 13-15 ("Bankr. R. 593:1, 11, 13-15").

**III.** **This Court has jurisdiction to hear A-Bar's appeal of the bankruptcy court's October 11, 2013 order.**

The bankruptcy judge issued the order on BSI's lease assumption motion[3] and A-Bar's opposition thereto,[4] as well as its motion requesting its denial of assumption[5] on October 11, 2013.[6] The *Order* and associated *Memorandum Opinion*[7] purport to fully dispose of the lease assumption issue and are for the purposes of appeal final. A-Bar filed its *Notice of Appeal* to the District Court on October 22, 2013,[8] within the 14 days allowed by Bankruptcy Rule 8002(a).

**III.** **This Court has jurisdiction to hear A-Bar's appeal of the bankruptcy court's January 24, 2013 and February 21, 2013 orders.**

A-Bar also appeals a January 24, 2013 order[9] in which the bankruptcy judge *sua sponte* extended an assumption deadline contained in a court-approved *Agreed Order*. A-Bar noted its objection by immediately moving the bankruptcy court for to modify that portion of its order.[10] The denial[11] of that motion is also appealed. On brief and at the March cure hearing in bankruptcy court, A-Bar reiterated its objection.[12] A-Bar filed its *Notice of Appeal* of the cure deadline extension order on October 22, 2013,[13] within 14

---

[3] Bankr. R. 107 – *August 10, 2011 Omnibus Motion to Assume Lease or Executory Contract of Nonresidential Real Property filed by BSI* ("*BSI Assumption Motion*").
[4] Bankr. R. 115 – *August 23, 2011 Opposition to Motion to Assume filed by A-Bar.*
[5] Bankr. R. 497 – *January 16, 2013 Motion for Lease Rejection at 400 Bourbon Street filed by A-Bar.*
[6] Bankr R. 593 – *October 11, 2013 Order.*
[7] Bankr. R. 592 – *October 11, 2013 Memorandum Opinion.*
[8] Bankr. R. 597 – *October 22, 2013 Notice of Appeal filed by A-Bar.*
[9] Bankr. R. 512 – *January 24, 2013 Order Setting Hearing on Motion for Lease Rejection.*
[10] Bankr. R. 514 – *January 25, 2013 Motion to Modify Order Setting Hearing on Motion for Lease Rejection filed by A-Bar.*
[11] Bankr. R. 541 – *February 21, 2013 Order Denying Motion to Modify Order.*
[12] Bankr. R. 558:12 – *March 25, 2013 Pre-Hearing Memorandum filed by A-Bar*; Transcript of March Trial ("Transcript at Bankr. R. _____") 572:168:7 – 169:2; Bankr. R. 576:2 – *June 6, 2013 Post Trial Memorandum in Re Motion to Assume Lease filed by A-Bar*; 583:7 – *June 20, 2013 Memorandum in Re Reply to Post-Trial Memorandum filed by A-Bar.*
[13] Bankr. R. 597 – *October 22, 2013 Notice of Appeal filed by A-Bar.*

days of the Court's October 11, 2013 order which made the cure extension orders final.
FED. R. BANKR. P. 8002(a).

STANDARD OF REVIEW

When reviewing bankruptcy rulings, this Court functions as an appellate court; it applies the same standards of review as the Court of Appeals. *In re Consol. Companies, Inc.*, 185 B.R. 223, 225 (E.D.La. 1995) (McNamara, J.); *Matter of Webb*, 954 F.2d 1102, 1103-1104 (5th Cir. 1992).

A-Bar's appeal chiefly concerns the bankruptcy judge's interpretation and application of mutually consented-to and court-approved *Agreed Order* provisions, as well as the judge's failure to give a prohibitory Bankruptcy Code provision its proper construction. Contract interpretation and statutory construction are questions of law. *In re Consol. Companies, Inc.*, *supra*; *Rutgers State University v. Martin Woodlands Gas Co.*, 974 F.2d 659 (5th Cir. 1992). When questions of law are involved, this Court owes no deference to the bankruptcy judge and his rulings are subject to correction by this Court's plenary review under the *de novo* standard. *Matter of Delta Towers, Ltd.*, 924 F.2d 74, 76 (5th Cir. 1991).

Aside from the errors in interpreting and applying contracts and statutes, A-Bar appeals an aspect of the bankruptcy judge's ruling in which the bankruptcy judge used an inappropriate Louisiana jurisprudential doctrine to justify a factual finding which should have been governed by the Bankruptcy Code. This presents the Court with a mixed question of law and fact. Mixed legal/factual questions are also reviewed *de novo*. *In re Virgin Offshore USA, Inc.*, 2013 WL 4854312, *2 (E.D.La. 2013) (Barbier, J.); *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000).

The only pure finding of fact in this matter, that BSI didn't cure the defaults at 400 Bourbon Street by December 31, 2012,[14] shouldn't be disturbed by this Court unless it is found to be clearly erroneous. FED. R. BANKR. P. 8013.

Questions of law and mixed legal/factual questions which the bankruptcy judge left open are also appropriate for this Court's *de novo* review and determination without remand for further findings or consideration. *In re Bowyer*, 916 F.2d 1056 (5th Cir. 1990).

**ISSUES PRESENTED FOR REVIEW**

A-Bar identifies the following issues in the bankruptcy judge's 17-page *Memorandum Opinion*,[15] most of which concern contractual interpretation and statutory construction, which must be properly resolved in order to reach the correct result in a contested lease assumption attempt:

I.     **Issues involving a) the construction the bankruptcy judge gave the prohibitory lease assumption provision in § 365(b)(1) of the Bankruptcy Code; and b) the bankruptcy judge's interpretation of the parties' consent judgment regarding BSI's cure of maintenance defaults.**

> The Bankruptcy Code specifically prohibits lease assumption in the presence of nonmonetary defaults absent three statutory prerequisites. 11 U.S.C. § 365(b)(1)(A)-(C). The issue presented for review is whether the *Agreed Order* satisfied § 365(b)(1)'s three prerequisites under the circumstances presented to the Bankruptcy Court on May 15, 2012.

> Courts in the Fifth Circuit interpreting § 365(b)(1)'s prohibitory language require debtors to prove each of the three assumption prerequisites before approving lease assumption. The issue presented for review is whether the *Agreed Order*, which addressed only one of the three assumption prerequisites, excused the debtor from fulfilling the other two prior to the bankruptcy court's approval of assumption.

---

[14] Bankr. R. 592:10-11,15.
[15] Bankr. R. 592.

4

The parties included the words "the Reorganized Debtor's assumption of the Lease of the premises at 400 Bourbon is approved" in their *Agreed Order*, an agreement which addressed only the first (nonmonetary default cures) of the three assumption requirements. The issue presented is whether the use of this language fully disposes of assumption, whether by operation of waiver, *res judicata* or other estoppel-based principles.

The *Agreed Order* addressed three items: 1) immediate commencement of cure work; 2) timely payment of cure work professionals and participation in refereed cure process; and 3) a 2012 year-end cure deadline. The issue presented is whether the terms of the *Agreed Order* were really just the parties' enforceable definition of § 365(b)(1)(A) cure.

The *Agreed Order*'s effects were expressly "subject to the terms of this Order". The issue presented for review is whether the obligations created by the *Agreed Order* were subject to a modality, here the Louisiana Civil Code Article 1767 suspensive condition ("condition precedent").

If the effect of the *Agreed Order* was subject to a suspensive condition, the issue presented for review is whether the agreed-upon conditions were satisfied as of the court-approved deadline in the *Agreed Order*.

II.  **Issues involving the bankruptcy judge's selective disregard for certain terms of the parties' consent judgment on cure.**

The bankruptcy judge approved the *Agreed Order* in which the debtor promised to cure all maintenance and repair defaults by December 31, 2012. The issue presented for review is whether the bankruptcy judge was legally justified in *sua sponte* refusing to enforce the parties' bargained-for December 31, 2012 cure deadline which the bankruptcy court approved as a consent judgment.[16]

Over A-Bar's objection, the bankruptcy judge *sua sponte* undid the December 31, 2012 cure deadline created by the parties in their *Agreed Order*, permitting the debtor until February 28, 2013 to complete cure work. The issue presented is whether the bankruptcy court's consideration of evidence of cure efforts after even its amended deadline was appropriate.

---

[16] Bankr. R. 449.

III. **Issues involving the construction given § 365(b)(1)(B) of the Bankruptcy Code, which makes BSI's payment of A-Bar's attorney's fees and other pecuniary damages a statutory prerequisite to lease assumption.**

> Assuming for the sake of argument that assumption took place in May 2012, presented for review is the issue of whether the Bankruptcy Court's award under 11 U.S.C. § 365(b)(1)(B) properly excluded attorney's fees incurred by The Absinthe Bar between bankruptcy petition and lease assumption.

IV. **Issues involving the bankruptcy judge's failure to require BSI to adequately assure its future performance of the lease, as required by § 365(b)(1)(C) of the Bankruptcy Code.**

> Before and during the bankruptcy, BSI and its predecessors violated consent decrees and broke promises to escrow money meant to secure its lease obligations. Given BSI's 16-plus year history of default and the Fifth Circuit's "extremely fact-specific" approach toward a debtor's burden of proving adequate assurance of future performance when considering lease assumption motions, the issue presented for review is whether the bankruptcy judge erred in approving assumption without ever addressing the third prong of lease assumption under § 365, even when A-Bar's (and BSI's) requested an evidentiary hearing on the issue.

> At the conclusion of the March trial, the bankruptcy judge clearly indicated to the parties that only cure had been addressed thus far. The issue presented for review is whether assumption approval is permissible where only cure (not attorney's fees or adequate assurance of future performance) has been contemplated by the parties and the bankruptcy court.

V. **Issues involving the bankruptcy judge's disregard of the findings of the court-appointed construction referee; the appropriateness of the "substantial performance" standard in a contested lease assumption bankruptcy proceeding:**

> At the outset of the trial, the bankruptcy judge explained to the parties that BSI had the burden of showing that it had effected cure (and the other assumption requirements). Presented for review is the issue of whether the bankruptcy judge's disregard of the construction referee's factual findings on cure was warranted based on the identity of and testimony given by the debtor's witnesses; also presented is whether the "substantial performance" standard discussed by the bankruptcy judge has

6

anything to do with a lease assumption motion in a bankruptcy proceeding.

## NATURE OF THE CASE;
## COURSE AND DISPOSITION OF PROCEEDINGS BELOW

Because the errors alleged by A-Bar primarily involve the interpretation of the *Agreed Order* and the construction given § 365(b)(1) of the Bankruptcy Code, A-Bar places special emphasis on the <u>nature of the case</u>, the <u>course of the proceedings</u>, and the lease assumption motion's eventual <u>disposition</u>, in its Rule 8010(a)(1)(D) statement. A-Bar re-produces below the salient features of more than 2 years of contested lease assumption proceedings.

*The Chapter 11.*

*In re Bourbon Saloon* is a voluntary bankruptcy reorganization case brought in May 2011 by a corporate debtor, Bourbon Saloon, Incorporated ("BSI"). BSI operates three Bourbon Street bars in leased premises. In order to continue with each of its Bourbon Street arrangements, BSI needs court approval. 11 U.S.C. § 365. At issue here is BSI's commercial lease ("400 Bourbon Lease") of A-Bar's building at 400 Bourbon Street ("400 Bourbon") and whether BSI ever entitled itself to assume the lease under the Bankruptcy Code and the parties' *Agreed Order*.

*The Assumption Motion and Opposition.*

BSI moved to assume the 400 Bourbon Lease in August 2011, indicating that it was not in default.[17] A-Bar filed an opposition to BSI's August 2011 motion to assume, based on § 365(b)(1) of the Bankruptcy Code and the general prohibition of the assumption of

---

[17] Bankr. R. 107 – *BSI Assumption Motion.*

7

defaulted leases.[18] *In re Bourbon Saloon* and the resulting bankruptcy stay interrupted A-Bar's 2010 state court eviction proceedings against BSI,[19] which involved what the Vieux Carre Commission described as "years of Demolition by Neglect caused by more than a decade's worth of deferred maintenance."[20]

The Code's prohibition of the assumption of defaulted leases meant that the bankruptcy judge could authorize BSI's assumption of the 400 Bourbon Lease <u>only</u> after BSI made three distinct statutory showings. 11 U.S.C. § 365(b)(1)(A)-(C):

(A)    that it had cured the serious defaults at 400 Bourbon;

(B)    that it had compensated A-Bar for any actual pecuniary loss caused by BSI's defaults (attorney's fees and costs); and

(C)    that it had provided adequate assurance of future performance under the 400 Bourbon Lease.

*The fruitless search for cure at 400 Bourbon.*

For the latter part of 2011, the parties conducted discovery and discussed the issue of how BSI would address its defaults at 400 Bourbon, particularly the scope of work it would be required to perform in in satisfaction of the first requirement of lease assumption, § 365(b)(1)(A) "cure". A-Bar had an engineer and a contractor produce a construction "to-do" list for BSI.[21] BSI hired a construction team in November 2011,[22] a December 2011

---

[18] Bankr. R. 115 – *A-Bar Opposition to Assumption*; A-Bar also filed a proof of claim in the amount of the repairs required at 400 Bourbon [Bankr. Cl. 25-1].
[19] *The Absinthe Bar, L.L.C. v. Conti Management Group, Inc., Yousef Salem a/k/a Yousef Salem Aladwan a/k/a J'oubert Salem Aladwan and Antonios Eldayri*, No. 10-4855 "B" in Civil District Court for the Parish of Orleans.
[20] Bankr. Trial Exhibit ("Bankr. Tr. Ex. ____") 88 – *November 13, 2012 VCC Architectural Review Staff Recommendations*.
[21] Bankr. Tr. Ex. 46 – *October 6, 2011 Hal Collums Construction Report prepared for A-Bar and BSI*.
[22] Bankr. R. 249-251 – *December 1, 2011 Applications to Employ Contractor, Architect, Engineer filed by BSI*.

cure mediation failed.[23] In order to resolve the dispute as to the extent of repairs BSI would be required to perform, in January 2012 the bankruptcy judge approved the use of Danny Shaw, a Baker Donelson construction attorney and licensed engineer, as a third-party construction referee to determine the scope, responsibility, and workmanship of BSI's cure repairs.[24]

***BSI's reorganization confirmed over creditors' objections and despite the pending and "hotly contested" 400 Bourbon lease assumption.***

In early 2012, BSI sought Chapter 11 plan confirmation, which prompted objections from creditors. Creditors immediately objected, arguing that BSI couldn't possibly consummate its reorganization without properly assuming each of its leases, some of which were "hotly contested" by BSI's landlords.[25] Nevertheless, the Plan was confirmed on March 26, 2012[26] and the hearing on BSI's motion to assume the 400 Bourbon lease was continued until May 14, 2012, as BSI was still disputing the majority of the cure work proposed by A-Bar.

***The parties' cure agreement.***

Between BSI's assumption motion and early May 2012, the lease assumption hearing had been continued 4 times[27] and BSI had yet to start any of the cure work at 400 Bourbon. A-Bar agreed to give BSI more time to assume if BSI: 1) abandoned its dispute of scope of cure work at 400 Bourbon; 2) agreed that workmanship/scope of cure would be determined by the court-approved construction referee; and 3) agreed that its right to a cure finding

---

[23] Bankr. R. 272 – *December 13, 2011 Order Granting Motion To Enter Agreement to Mediate.*
[24] Bankr. R. 298 – *January 13, 2012 Order Granting Application to Employ Danny Shaw as Referee.*
[25] Bankr. R. 343 – *March 2, 2012 Objection to Confirmation.*
[26] Bankr. R. 411.
[27] Bankr. R. 126 (8/27/2011), 217 (11/9/2011), 281-282 (12/15/2011), 319 (1/27/2012).

would be subject to a December 31, 2012 deadline. The parties formalized this into a court-approved *Agreed Order* on May 15, 2012.[28]

In September 2012, BSI withdrew a *Motion for Final Decree*[29] in the bankruptcy after A-Bar pointed out that BSI hadn't assumed its 400 Bourbon lease; it hadn't complied with the *Agreed Order*.[30]

**A-Bar's request for assumption denial.**

Following agreed-upon December 27 and 31, 2012 inspections, A-Bar filed a January 16, 2013 motion reiterating its August 2011 opposition and calling for the bankruptcy judge to deny BSI's lease assumption motion, demonstrating even in advance of the referee's ruling that BSI's work wasn't passable under any standard as of the *Agreed Order*'s December 31, 2012 deadline.[31]

**The bankruptcy judge's curious extension of the Agreed Order's cure deadline.**

Nearly a month after the deadline had passed, the bankruptcy judge responded to A-Bar's motion by *sua sponte* extending the bargained-for, consented-to, court-ordered *Agreed Order* December 31, 2012 cure deadline nearly 60 days.[32]

A-Bar immediately moved for modification of the cure date extension in the bankruptcy judge's order[33] and noticed its appeal of the court's order.[34] At the modification motion hearing on February 20, 2013 the court and BSI agreed that the *Agreed Order*'s

---

[28] Bankr. R. 449 ("*Agreed Order*").
[29] Bankr. R. 478, 484.
[30] Bankr. R. 483 – *October 10, 2012 Opposition to Motion for Final Decree filed by A-Bar*.
[31] Bankr. R. 497 – *January 16, 2013 Motion for Lease Rejection at 400 Bourbon Street filed by A-Bar*.
[32] Bankr. R. 512 – *January 24, 2013 Order Setting Hearing on the Motion for Lease Rejection and Motion to Assume Lease*.
[33] Bankr. R. 514 – *January 25, 2013 Motion to Modify Order Setting Hearing on Lease Rejection/Assumption filed by A-Bar*.
[34] Bankr. R. 524 – *February 1, 2013 Notice of Appeal filed by A-Bar*.

December 31, 2012 deadline was still sacrosanct and the seemingly-altered scheduling order was really just a measure taken to prepare the matter for the March trial on whether BSI was entitled to a cure finding:[35]

> MR. LILLY:  Your Honor, today's motion is simple and pointed directly to we'd really like for you to reconsider one aspect of your order setting the trial date on this, specifically the February 28th deadline for cure. Remember back in May when the parties hadn't reached any real – made any real headway on cure in this issue, we agreed to boot the matter down seven and a half months and establish a deadline for all work to be done and all defaults to be cured. We agreed that December 31st would be the date for that. We've arranged with Danny Shaw, the Referee in this matter, a pretty comprehensive schedule leading up to that date and even extending after it by which we are refereeing scope, responsibility, and now we're in the workmanship phase of his determination. The problem I think with the February 28th date, a side from the fact that this was our contract, is that it presents us with sort of a moving target for trial and that reasonableness is going to be dictated upon what was done by a date certain. And whether that date certain is February 28th or December 31st is a substantial difference, 60 days. And we are going to be arguing at cross-purposes at that point, because the Referee has moved things forward based on the December 31st deadline. And we're almost done there. I'd really ask for you to take a look again at the February 28th date and we think that we're about to wrap this up as it is.

> THE COURT: If I grant the relief you're requesting and set aside the portions of the January 23 order that you're requesting, what would be the need for the hearing in March? It would be a *fait accompli*, because they couldn't really contest your motion for rejection of the lease? There would be no need for a trial.

> MR. LILLY:  No, Your Honor. Actually there's a substantial amount of work that has been completed. We have probably 25 pages of spreadsheets. It's all before the arbitrator. We're actually deposing experts right now to figure out whose posi-

---

[35] Transcript at Bankr. R. 596 – *Transcript of February 20, 2013 hearing on A-Bar's Motion to Modify Order [Bankr. R. 514]*

tion is probably the most palatable. So the work was complete. It's just a matter of whether -- and I think this is the difference in our appreciation of time versus Bourbon Saloon's appreciation of time is we think that the December 31st date ends the clock. And we're not saying that painting here, or hauling out trash, or getting a permit here or there, but December 31st did not start the clock for punch list items.

THE COURT: No, but here you're saying as I understand you that the lease was terminated as of December 31st and that's it.

MR. LILLY:  Absolutely not, Your Honor. We just want the Bankruptcy Code applied and that is whether cure was accomplished. And actually –

THE COURT: Well, the Bankruptcy Code doesn't say anything about the particular date on which a cure must be accomplished. It leaves it rather open to the facts and circumstances of the case. And in every instance in which a lease is accepted or there's an attempt to reject a lease, the party seeking the acceptance of the lease or the continuation of the lease doesn't have to complete all the cure obligations by a set date. There's nothing in the Code on that. It's left up to the discretion of the Court to be decided on the facts and circumstances of the case. And that's what I'm going to decide in March -- when is the trial date?

THE CLERK: March 26th and 27th.

THE COURT: March 26th and 27th. I just want to make sure that we had all the issues clearly delineated and everything done that was supposed to be done before that trial date. And I didn't think I was opening up any new rights for the lessee or foreclosing any rights that the lessor had accumulated. I was simply making sure that everything was presented as a clear-cut issue at the trial and that the discovery or whatever else needed to be done would be done before the trial date.

MR. LILLY:  Your Honor, I think this -- I think if you'd reconsider this it really tidies things up by sticking with that December 31st date, because I think we've honored it. I think everyone's honored it. I think Bourbon Saloon has gotten their repairs done and now it's a matter of whether or not they're good enough. And I think that's where we are.

THE COURT: Well, but that's begging the question of whether they're good enough. If they did it by December 31 and you want me to hold that they were not good enough, as far as you're concerned that means the lease is cancelled. It's all over with, and that's the main asset of the Debtor corporation.

MR. LILLY: Well, Your Honor, I think like I mentioned before, we now will have two dates. And whether or not reasonableness is determined by their efforts by the 31st, which is what we agreed upon in this court order, or the 28th, that's where -- that's the only -- I just don't want to get in a month's time and basically my client is held to the February 28th date which is some 60 days after we thought everything would be wrapped up.

THE COURT: I thought I was doing you a favor. I thought I was setting it -- in effect setting a deadline that it everything wasn't wrapped up by then when we have the trial they may or may not be held to affirm the lease, ratify the lease, but I --

MR. LILLY: I think maybe I'm -- this was just a prophylactic measure. I was worried about that February 28th date, but it sounds like I don't have anything to worry about. So, I appreciate it, Your Honor.

THE COURT: Well, not if -- but if you take the position everything had to be done by December 31, and if there's one wall that needs to be painted that the lease is rejected, --

MR. LILLY: Absolutely not.

THE COURT: -- then you've got something to worry about.

MR. LILLY: Absolutely not, Your Honor, and that's absolutely not where we're going so. So we may not have theproblem I think we do.

THE COURT: All right.

MR. IVERSTINE: I think that's the basis of our opposition to the motion is that the way I read the Motion to Modify the Order that this drop dead deadline totally disregarded any kind of -- the materiality of any objection to our cure attempts pre-December 31st. And so naturally we need a scheduling, a

13

way to fix the scheduling problem where we're   past Decem-
ber 31st and now we need to have a hearing and clear up is-
sues.   And that's how we appreciated the Court's February
28th deadline as just a practical matter.

THE COURT: All right. Well, then I'm going to deny the Mo-
tion for a Partial Alteration or Amendment of the Order. I'm
repeating myself, but I intended the order to be in the nature
of a scheduling order to complete the discovery and whatever
else needed to be done to gear up to try the issue on March
26th and 27th. All right?

MR. LILLY:  Thank you, Your Honor.

The bankruptcy judge was wrong; although there wasn't anything in the Code on deadlines

for assumption, BSI and A-Bar had created the deadline by contract which was approved

by the bankruptcy judge. With a confusing new deadline for "wrapping up" repairs, but

under the understanding that December 31, 2012 was the determinative date for whether

the lease would be assumed or rejected, the parties prepared for the March trial and BSI

deposed A-Bar's experts and principals.

***The judge calls the parties' attention to the conditions in the Agreed Order.***

The revised trial scheduling order also instructed the parties to address at trial:

Whether the lease was assumed by the debtor by the consent
order dated May 15, 2012 with the conditions set forth in the
order reflecting whether the failure to provide the necessary
maintenance and cure of the assumed lease is a resolutory con-
dition giving rise to a breach of contract; or

Whether the maintenance and cure conditions set forth in the
consent order were conditions precedent to the assumption of
the lease giving rise to a rejection of the lease.[36]

---

[36] Bankr. R. 512.

A-Bar made 4 written submissions[37] to the Court explaining why the finding of § 365(b)(1)(A) cure (and therefore assumption itself) was expressly (and suspensively) conditioned upon the three requirements contained in the *Agreed Order*.[38]

***BSI's call for a new interpretation of the Agreed Order.***

A week before the assumption hearing, BSI for the first time took the position that the *Agreed Order* on cure should be interpreted to achieve a **full-blown assumption** – that A-Bar had effectively bargained away several years of eviction and lease assumption opposition litigation and that it shouldn't be able to oppose assumption any longer.[39].

***The ~~lease assumption~~ cure trial.***

The bankruptcy judge limited the parties' presentations at the two-day hearing in March to cure:

> THE COURT: Well, I think we've had enough history in this thing. I'm really interested in whether the cure required by the order of 2012 has been accomplished and what compliance there's been and what has not been complied with and whether Danny Shaw's report is erroneous or it shows that there are still areas that have not been done.[40]

In reality, the issue of cure under § 365(b)(1)(A) of the Bankruptcy Code is to this day the only matter which has been addressed by the parties or in court. The *Agreed Order* addressed nothing more than cure. Not attorney's fees under § 365(b)(1)(B). Not adequate assurance of future performance. The bankruptcy court never heard these issues either.

---

[37] Bankr. R. 483:3 – *October 10, 2012 Opposition to Motion for Final Decree filed by A-Bar*;
   Bankr. R. 497-59:29 – *January 16, 2013 Motion for Lease Rejection at 400 Bourbon Street filed by A-Bar*;
   Bankr. R. 558:1-8 – *March 25, 2013 Pre-Hearing Memorandum filed by A-Bar*;
   Bankr. R. 583:5 – *June 20, 2013 Post-Trial Reply Memorandum filed by A-Bar*.
[38] Bankr. R. 449:3.
[39] Bankr. R. 551 at ¶ 9 – *March 19, 2013 BSI Opposition to A-Bar Motion for Lease Rejection*.
[40] Transcript at Bankr. R. 571:70, l. 25 – 571:71, l. 4.

15

Even when the parties approached the court ready to tackle the issue of § 365(b)(1)(C) adequate assurance of future performance,[41] the bankruptcy judge indicated that if a <u>cure</u> finding came back, there would be other hearings before <u>assumption</u> could take place as a matter of law:

> MR. LILLY: Your Honor, there's -- we find that there'd be some utility in a brief evidentiary hearing on some issues that bear directly on adequate assurance of future performance. Is that something that you'd be more comfortable later or do you want to just address it in the briefs?
>
> THE COURT: Well, we've got to get over the issue of whether the cure of the –
>
> MR. LILLY: Okay.
>
> THE COURT: -- repairs and maintenance whether that was timely and whether it was done in an acceptable manner. If we don't get over that we don't even get to another question. We may have to have another hearing, but that will be on something different. That will be what the damages are for rejection because if I hold that those repairs were not done in a timely enough manner and were not satisfactorily done, then I'm not quite sure what happens. The lease is not assumed or if it was assumed subject to conditions, it's rejected because the conditions weren't met. So, we'll reach that question when we need to.
> All right, Court is adjourned.[42]

The bankruptcy judge acknowledged that only cure had been addressed at the hearing and that A-Bar had adequately briefed the court on lease assumption law and ordered thorough briefing from both parties on the evidence regarding cure.[43]

In June 2013, the parties filed post-hearing briefs as ordered by the Court.[44]

---

[41] Transcript at Bankr. R. 572:185, l. 22 – 572:190, l. 7.
[42] Transcript at Bankr. R. 572:194, ll. 3-22.
[43] Transcript at Bankr. R. 572:191, ll. 9-20.
[44] Bankr. R. 576-579, 582-585.

*The ruling.*

The matter was taken under advisement,[45] where it remained until October 11, 2013, when the bankruptcy judge issued a 17-page *Order* and *Memorandum Opinion*.[46] The bankruptcy judge held that:

1) despite its silence as to 2/3 of the statutory requirements for § 365 lease assumption, the *Agreed Order* had disposed of assumption altogether in May 2012, by the apparent consent of A-Bar; and

2) the December 31, 2012 cure deadline in the *Agreed Order* was not met and A-Bar should be reimbursed for attorney's fees it incurred after that date.

The ruling was silent on the suspensive condition in the *Agreed Order*, which the judge had ordered the parties to address.[47] The ruling said nothing of adequate assurance of future performance under § 365(b)(1)(C). There was no explanation as to why the judge didn't take on these issues; the bankruptcy judge even granted assumption before it had any idea whether BSI could (or would) pay the attorney's fees ordered.

A-Bar noticed its appeal of both the October and February 2013 rulings, requesting under 28 U.S.C. § 158(d)(2)(B)(i) direct certification of the issues to the Court of Appeals,[48] which was denied.[49]

A-Bar is now before the Court, filing its original merits brief pursuant to this Court's February 28, 2014 *Order*[50] and FED. R. BANKR. P. 8009-8010.

---

[45] Bankr. R. 568.
[46] Bankr. R. 592, 593.
[47] Bankr. R. 512.
[48] Bankr. R. 615.
[49] Bankr. R. 634.
[50] ROA. 4.

## FACTS DIRECTLY RELEVANT TO
## ISSUES PRESENTED FOR REVIEW

Because the bankruptcy court's errors concern the interpretation of the *Agreed Or-der* and what it <u>could</u> or <u>could not</u> achieve given the prohibitory construction of § 365(b)(1) of the Bankruptcy Code, A-Bar presents the following facts concerning the *Agreed Order*, with special emphasis on the approach taken by the parties and the bankruptcy court in the proceeding below.

### I.      The nature of the *Agreed Order.*

The parties arrived at the terms of the *Agreed Order* after 6 months of failed efforts to define the scope of "cure" necessary at 400 Bourbon. The *Agreed Order* accomplished several goals:

1) it was BSI's agreement to abandon its dispute of a defined set of defaults, for which it now acknowledged responsibility;[51]

2) it was BSI's agreement that it would immediately commence work on the defaults it had acknowledged as its own, above, as well as all extant citations concerning 400 Bourbon;[52]

3) it was the parties' agreement to continue with their refereed reso-lution of the scope of cure which was still being disputed by BSI;[53] and

4) it was the parties' agreement that "all maintenance and repair de-faults must be cured and work completed on or before December 31, 2012".[54]

The context of the agreement is crucial.

---

[51] Bankr. R. 449 at ¶ 5-6.
[52] Bankr. 449 at ¶ 10.
[53] Bankr. R. 449 at ¶ 7-8, 11.
[54] Bankr. R. 449 at ¶ 12.

In lease assumption, A-Bar had no obligations but to identify the defaults and inspect them once BSI submitted them as cured. Additionally, the bankruptcy stay largely prohibited A-Bar from enforcing most of its rights under the parties' lease. A-Bar had already consented to continue the contested lease assumption hearing 4 times.[55] It did so because BSI had made no progress toward cure, not even a set of plans for repair, during this time.[56]

Even though the record and BSI's trial testimony are clear that BSI assembled its construction team (engineer, architect, contractor] November 2011,[57] they didn't do anything until almost a year later. BSI had yet to do any work at 400 Bourbon when the parties agreed to the terms of the *Agreed Order* in mid-May 2012. In fact, the trial record reflects that, as late as June or July, that BSI was even considering using a different contractor.[58]

Rather than take BSI to an evidentiary hearing to show it hadn't done anything to cure the 400 Bourbon defaults, A-Bar asked for a date certain by which the parties could present their respective cases to the bankruptcy judge. BSI agreed that its cure effort would be judged by a December 31, 2012 deadline and the bankruptcy judge approved the *Agreed Order*.

The *Agreed Order* was simply the parties' effort to reach everyone's goal by year's end. A-Bar's only consideration for this agreement was the deadline for BSI's repairs. At that point, the parties could go before the bankruptcy judge and plead their cases as to why, or why not, BSI was entitled to assume the lease. As a practical matter, until BSI's cure deadline arrived, it was premature to talk about the other requirements of lease assumption

---

[55] Bankr. R. 126 (8/27/2011), 217 (11/9/2011), 281-282 (12/15/2011), 319 (1/27/2012).
[56] Pre-Trial Order Statement of Undisputed Facts ("St. Undisputed Facts") at Bankr. R. 567, ¶ 58.
[57] Bankr. R. 249-251 – *December orders approving the hiring of BSI construction professionals*; Bankr. Transcript at R. 571:57, l. 25 – 58, l. 8.
[58] St. Undisputed Facts at Bankr. R. 567, ¶¶ 44, 49, 51; Bankr. Transcript at R. 571:59, l. 10 – 16; Bankr. Tr. Ex. 77, 53.

(attorney's fees under § 365(b)(1)(B) or future performance assurance under § 365(b)(1)(C)). These weren't addressed in the parties' *Agreed Order*.

## II.    BSI not only failed to comply with the Agreed Order; it refused to.

BSI's promises under the *Agreed Order* weren't ambiguous; they also weren't kept:

### A.    BSI didn't immediately commence work.

At trial, the bankruptcy judge noted that BSI didn't immediately commence work.[59]

The undisputed proof stipulated and offered at trial bears this out:

a.    BSI knew the scope of work demanded by A-Bar since November 2011, when A-Bar forwarded Hal Collums Construction's report to BSI;[60]

b.    BSI already had its construction crew in place in November 2011 when it moved for approval of their hiring;[61]

c.    BSI knew the scope of work required by the VCC since February 2012;[62]

d.    BSI switched from its original A-Bar approved contractor, Stallings Construction[63] to another contractor at some point in June or July;[64]

e.    BSI didn't generate a set of plans until August 14, 2012;[65]

f.    BSI didn't have plan submissions to the VCC until September 19, 2012[66]

g.    BSI's September plan submission was rejected;[67]

---

[59] Bankr. Transcript at R. 571:15, ll. 10-20.
[60] St. Undisputed Facts at Bankr. R. 567, ¶ 24-25.
[61] Bankr. R. 249-251; Transcript at Bankr. R. 571:57, l. 25 – 58, l. 11.
[62] St. Undisputed Facts at Bankr. R. 567, ¶¶ 34-35, 39.
[63] Bankr. Tr. Ex. 53.
[64] St. Undisputed Facts at Bankr. R. 567, ¶¶ 44, 49, 51; Bankr. Transcript at R. 571:59, l. 10 – 16; Bankr. Tr. Ex. 77, 53.
[65] St. Undisputed Facts at Bankr. R. 567, ¶ 58.
[66] St. Undisputed Facts at Bankr. R. 567, ¶ 59.
[67] St. Undisputed Facts at Bankr. R. 567, ¶ 70; Bankr. Tr. Ex. 88.

> h.  BSI didn't get its permits to start work until December 4
> and December 20, 2012.[68]

With the manpower, money, and notice BSI had, as early as August 2011 when A-Bar filed its opposition with exhibits demonstrating many of the defaults at 400 Bourbon, there was no excuse for BSI's months' long delay in commencing work at 400 Bourbon. BSI had no justification of the breach its first duty of the *Agreed Order* – immediate commencement of work from May 15, 2012.

**B.  BSI didn't participate in the referee process; it delayed until December 2012 and disputed defaults it previously acknowledged in the *Agreed Order*.**

Despite the referee's involvement since January 2012, and despite A-Bar's repeated requests for BSI's list of disputed cure items,[69] BSI didn't submit this list to A-Bar until November 27, 2012[70] and it didn't get it to the referee until December 4, 2012.[71]

Further, BSI delayed the refereed process by denying responsibility for nearly every item of cure work it had acknowledged as its own in the *Agreed Order*.[72] The referee's ruling found that BSI was responsible for each of the items it contested,[73] primarily because it had acknowledged responsibility in two previous consent judgments, including the *Agreed Order*.[74]

BSI left the referee a few weeks during the holiday season to attend to this matter. The delay was inexcusable given the nearly 8 extra months A-Bar had granted BSI in the

---

[68] St. Undisputed Facts at Bankr. R. 567, ¶¶ 75-76.
[69] Bankr. Tr. Ex. 77.
[70] St. Undisputed Facts at Bankr. R. 567, ¶ 67.
[71] St. Undisputed Facts at Bankr. R. 567, ¶ 68.
[72] Bankr. R. 449, ¶ 5-6.
[73] Bankr. Tr. Ex. 118-11,12.
[74] *Id.*

*Agreed Order*, as well as the fact that A-Bar had made its cure requirements known since November 2011,[75] with the VCC's requirements published in February 2012.[76]

BSI refused to comply with its second obligation under the *Agreed Order* – participation in the refereed search for cure.

### C. BSI didn't finish its cure work by the December 31, 2012 deadline; the bankruptcy judge even awarded attorney's fees based on this failure.

There was no ambiguity in the December 31, 2012 deadline. The parties routinely referred to it as the "drop dead" date or deadline.[77] It was the date by which BSI had to have its work at 400 Bourbon complete in order make a cure showing for lease assumption.

The Bankruptcy Code permits of no "substantial performance" standard for cure of defaults as a prerequisite to lease assumption. That term is a Louisiana construction and contract dissolution term. It's not applicable to lease assumption, which requires that all defaults be cured prior to or on the date of assumption – "substantially cured" isn't recognized by the Code. It wasn't the standard in the *Agreed Order* either. As of December 31, 2012, maintenance and repair defaults were either cured or they weren't. Work was either completed or it wasn't.

As the bankruptcy judge indicated at the February 2013 hearing when he denied A-Bar's request to modify the judge's alteration of the cure deadline, the March hearing would address whether real work was left unaccomplished as of December 31, 2012:

> THE COURT: -- but if you take the position everything had to be done by December 31, and if there's one wall that needs to be painted that the lease is rejected, --
>
> MR. LILLY:  Absolutely not.

---

[75] St. Undisputed Facts at Bankr. R. 567, ¶ 25.
[76] *Id*. at ¶ 35-36, 39.
[77] Transcript at Bankr. R. 596:7, l. 22.

THE COURT: -- then you've got something to worry about.[78]

At his final inspection, the referee was charged with determining whether work was complete by December 31, 2012. The scope and adequacy of BSI's masonry repairs was briefed extensively to the referee in February following the final inspection after the final deadline. At trial, Hal Collums testified that masonry alone would be a 3-month project[79] and BSI's former contractor, Stallings Construction, testified that in May 2012 he told BSI that masonry would be about a 12-week project.[80]

The referee wasn't wrong and he shouldn't have been disregarded; the repointing wasn't done correctly and, in some places, it wasn't done at all. Even under the inappropriately-extended deadline (February 18, 2013 inspection).[81] BSI failed in the largest scope of repairs in its obligations, the extensive masonry work needed at 400 Bourbon, and one which formed the basis for an earlier state court eviction *Consent Judgment*.[82]

At the March trial, BSI wasn't able to discredit the referee's analysis on improper masonry repointing, particularly where its own experts admitted that they'd not consulted the authoritative standards on historic masonry repointing.[83] It was established at the hearing that all of these documents are available through the VCC and online.[84]

BSI offered only self-serving testimony that it had fixed the masonry problems – from the very contractor charged with doing the work. There was absolutely no proof shown that the most substantial scope of work in this cure effort was satisfied as of December 31,

---

[78] Transcript at Bankr. R. 596:7, ll. 9-15.
[79] Transcript at Bankr. R. 572:76, ll. 18-21.
[80] Transcript at Bankr. 572:117, ll. 2-7.
[81] Bankr. Tr. Ex. 118.
[82] Bankr. Tr. Ex. 39.
[83] Transcript at Bankr. 571:96, l. 19 – 97, l. 15; Bankr. Tr. Ex. 122.
[84] Transcript at Bankr. R. 572:157, ll. 18-23.

2012, or even February 18, 2013 (the "revised" deadline). As the bankruptcy judge pointed out, there was never even an inspection of this supposed work. The only proof on masonry offered by BSI at the March hearing was the testimony of the VCC Director, Mr. Hesdorffer, who testified that he was "somewhat" familiar with the problems at 400 Bourbon.[85] Mr. Hesdorffer did not attend the inspections, he did not work the file, and he merely read a memo from a VCC staffer which indicated the progress at 400 Bourbon. No proof was offered that Mr. Hesdorffer has ever even visited 400 Bourbon.

At each relevant stage (December 27, 31, and February 18), A-Bar's experts photographically documented the masonry conditions at the February inspection[86] and testified that the masonry repair in December 2012 and even February 2013 was nowhere near complete.[87]

Each of BSI's witnesses, including Mr. Hesdorffer, conceded on cross examination that A-Bar's photographs did, in fact, depict damaged and improperly repaired mortar – even as late as February 18, 2013.[88]

A-Bar's experts, each of them contractors with expertise in historic masonry repointing, testified that far more than "punch list" work remained in February to properly repair the masonry units at 400 Bourbon.[89]

Unbiased witnesses, including BSI's own consulting contractor, testified at the March trial that the masonry work alone was a 12-week project worth between $30-

---

[85] Transcript at Bankr. R. 571:123, ll. 12-17.
[86] Bankr. Tr. Ex. 117.04-08; Ex. 117.14-16.
[87] Transcript at Bankr. R. 572:76, l. 1 – 82, l. 20; 571:49, l. 24 – 50, l. 15.
[88] Transcript at Bankr. R. 571:147-158 (VCC Director Hesdorffer); Transcript at Bankr. R. 571:92 – 109:14 (BSI Architect Gerarve).
[89] Transcript at Bankr. R. 572:82, ll. 16-23 (Collums testimony); Transcript at Bankr. 572:36, ll. 4-13; 572:49, l. 24 – 53:19 (Gurtler testimony).

$50,000.[90] These were stipulated facts at trial, <u>and so was the fact that Bourbon Saloon only spent $13,500 on masonry work</u>.[91]

Both the referee and the bankruptcy judge found that BSI hadn't finished its work by December 31, 2012 and the bankruptcy judge awarded A-Bar its attorney's fees after December 31, 2012 based on the breach:

> In this instant case, A-Bar incurred damages of attorney's fees and costs for litigation related to the **defaults that remained as of the December 31, 2012 cure deadline set forth in the Agreed Order.**

[Bankr. R. 592:15 (**emphasis added**)].

<u>The facts show that BSI was 0-3 on its promises in the *Agreed Order*</u>. It <u>didn't</u> immediately commence work and it <u>didn't</u> have any reason for the delay. It <u>didn't</u> have any reason for its delayed submission to the construction referee and its dispute of previously-acknowledged defaults wasn't made in good faith. Finally, it simply <u>didn't</u> meet the year-end deadline which was A-Bar's <u>only consideration</u> for entering into the *Agreed Order*.

Whatever it was meant to be, the *Agreed Order* was expressly conditioned upon the satisfaction of terms which BSI <u>didn't</u> even come close to fulfilling.

## III.    The bankruptcy judge's alteration of the 12/31/12 cure deadline in the Agreed Order.

The parties worked toward the December 31, 2012 deadline with the same understanding – that it would be used to determine whether BSI was entitled to lease assumption.

When the bankruptcy judge changed that deadline nearly a month after it had passed, he did so *sua sponte*. Neither party requested the extension. Neither party suggested

---

[90] St. Undisputed Facts at Bankr. R. 567, ¶¶ 46, 47.
[91] St. Undisputed Facts at Bankr. R. 567, ¶ 62.

any difficulty with their agreed-upon and court-approved deadline. The judge offered no explanation in his order[92] A-Bar objected to the extension of the December 31, 2012 cure deadline and in open court the bankruptcy judge explained that the extension was just a procedural wrap-up so discovery could be completed and that assumption or denial thereof would be based on the work performed by December 31, 2012 – <u>that no rights were being given or taken from the parties</u>.[93]

That turned out not to be the case.

Even after the referee found that all the work (masonry, windows, etc.) hadn't been completed by February 18, 2013,[94] <u>let alone December 31, 2012</u>, the trial judge took self-serving evidence from BSI's own construction crew that even the week before trial (late March 2013), BSI was performing work, which was somehow good enough for the judge. No other proof was made. No photos. No inspections. Just an "it's done" from BSI's contractor.

As was pointed out in A-Bar's motion to modify,[95] absent circumstances not present in this matter, settled law prohibits a judge from disturbing a consent decree, even if he thinks the changes he's made are for the better. As will be explained further below, this is all the more true in cases where a suspensive condition defines the parties' rights – the date set for completion of the uncertain event simply <u>cannot be altered by the judge</u>.

Here, the bankruptcy judge not only improperly re-set the deadlines after they'd passed, after he did so he assured A-Bar that their rights wouldn't be disturbed by the

---

[92] Bankr. R. 512.
[93] Transcript at Bankr. R. 596.
[94] Bankr. Tr. Ex. 118.
[95] Bankr. R. 514.

change. He then ruled based on nothing more than BSI's unsupported testimony that it was

right.

**IV.    Neither the parties' nor the bankruptcy court's approach toward this matter suggests that the *Agreed Order* was meant to or did accomplish lease assumption in toto.**

A-Bar has already argued that the *Agreed Order* couldn't, as a matter of law, have

been interpreted to satisfy the 3 exceptions to § 365(b)(1) prohibition of the assumption of

a defaulted lease. Only cure was mentioned and that's only 1/3 of the equation in a contested lease assumption.

The procedural posture, in A-Bar's nature, course, and disposition statement, above,

shows that neither the parties nor the bankruptcy court saw the *Agreed Order* for anything

other than what it was – an agreement which defined BSI's right to a finding of <u>only the</u>

<u>first assumption requirement</u> – "cure".

Facts, commercial reasonableness, and common sense, too, show that A-Bar never

abandoned its opposition to BSI's lease assumption, particularly where A-Bar's eviction

proceedings were interrupted by the Chapter 11, it was the first creditor on the scene in this

Bankruptcy,[96] it timely filed a proof of claim to the extent of BSI's pre-petition defaults,[97]

and for well over two (2) years, A-Bar has maintained a costly opposition to BSI's assumption of the 400 Bourbon lease, by:

1)    hiring Stephen Williamson, an experienced bankruptcy attorney, to
2)    file a written opposition[98] to the assumption motion[99] in which BSI alleged that it was not in default at 400 Bourbon; and by
3)    providing for BSI a list of necessary maintenance work;[100] and by

---

[96] Bankr. R. 20.
[97] Bankr. Cl. 25-1.
[98] Bankr. R. 115.
[99] Bankr. R. 107.
[100] Bankr. R. 46.

4)     hiring experts to determine the extent of the Cure work which would be required before BSI could request approval of its to be performed at 400 Bourbon; and by

5)     obtaining the Court's approval to hire a mediator to resolve the parties' dispute over what "cure" meant at 400 Bourbon;[101] and by

6)     hiring a Court-approved construction referee to resolve its disputes with BSI over the need for, responsibility for, and workmanship/quality of Cure work at 400 Bourbon;[102] and by

7)     insisting that the Bankruptcy Plan included language to preserve the ongoing assumption dispute even after confirmation;[103] and by

8)     negotiating an enforceable order detailing what would constitute the cure portion of lease assumption;[104] and by

9)     working with the construction referee in order to determine whether BSI had cured the maintenance defaults as set out in the *Agreed Order*; and by

10)    filing an early-2013 motion suggesting that BSI had not cured the maintenance defaults by the agreed-upon deadline, reiterating its August 23, 2011 opposition, requesting a hearing and a ruling that BSI was not entitled to assume;[105] and by

11)    continuing its work with the construction referee after the bankruptcy judge extended BSI's cure deadline, over A-Bar's objection and appeal to the District Court; and by

12)    engaging in a BSI-requested discovery period leading up to a two-day cure trial; and by

13)    preparing for and trying the issue of cure in the bankruptcy court on March 26-27, 2013; and by

14)    making court-ordered post-trial submissions on the factual cure issues presented at trial,[106]

all of which is not the behavior of a landlord who has acquiesced to lease assumption based solely on its tenant's promise to perform repairs – particularly given this tenant's history of breaking promises, even those approved by a state court judge in the context of eviction proceedings.[107]

---

[101] Bankr. R. 231.
[102] Bankr. R. 295.
[103] Bank. R. 411-1 at ¶ 6.1.1.a.
[104] Bankr. R. 449.
[105] Bankr. R. 497.
[106] Bankr. R. 576, 583.
[107] Bankr. Tr. Ex. 39.

**V.       BSI's approach toward securing its other Bourbon Street lease tells the tale.**

Undisputed facts show that when BSI and its landlord intended to effect an assumption of their lease by mutual consent, they did so by resolving <u>each necessary issue for assumption in writing and filing it with the bankruptcy court</u>.

201 Bourbon Street

In order to secure the approval of assumption of its lease at 201 Bourbon Street, Bourbon Saloon entered into a pre-confirmation stipulation[108] and *Agreed Order* with its landlord there, providing for:

> 1) <u>adequate assurance of cure</u> of an itemized list of defaults,[109] thereby satisfying § 365(b)(1)(A) of the Bankruptcy Code; and
>
> 2) a stipulation that <u>no pecuniary damages (attorney's fees) had resulted from the defaults</u>,[110] satisfying § 365(b)(1)(B); and
>
> 3) the agreement that <u>no further adequate assurance or payment (cure of defaults or performance of lease) was required by the landlord</u>,[111] satisfying § 365(b)(1)(C).

In view of BSI's "assumption by consent" agreement with its landlord at 201 Bourbon, which satisfied <u>each</u> of the requirements of § 365 of the Bankruptcy Code, it should be plainly evident that BSI's agreement at 400 Bourbon only contemplated one of those factors – cure. BSI's 11th hour argument regarding a "full assumption" was factually unreasonable.

By <u>unopposed motion</u> and <u>consent</u>, BSI assumed the **201 Bourbon lease** by agreeing in writing with its landlord: 1) a list of punch list repairs would constitute cure; 2) there were no attorney's fees to pay; and 3) the landlord wasn't going to require any further

---

[108] Bankr. R. Doc. 377 and 377-1.
[109] Bankr. R. Doc. 377-1, 28 items stipulated as punch list in recitals, as well as stipulation on p. 4 as to adequate assurance of cure and deadline for cure on p. 4.
[110] Bankr. R. 377-1 at ¶ 2 of p. 4.
[111] Bankr. R. 377-1 at ¶ 4 on p. 4.

adequate assurance of cure or performance under the lease. BSI satisfied § 365(b)(1)(A)-(C) and was entitled to assumption "by consent".

BSI's tenancy and its landlord at 400 Bourbon were different. A-Bar's eviction proceedings were interrupted by bankruptcy, A-Bar filed a <u>written opposition</u> and spent 2 years and hundreds of thousands of dollars litigating that opposition before agreeing on a defined mechanism for one aspect only of assumption – cure.

Aafter the parties and the bankruptcy judge had set the matter for trial on assumption, BSI's argument that the *Agreed Order* constituted A-Bar's agreement that it consenting to lease assumption was accepted by the bankruptcy judge. That decision was legally wrong, it was commercially unreasonable, it defied common sense, and it contravened the normal lease assumption practice, not only in bankruptcy, but in this very case.

## SUMMARY OF THE ARGUMENT

The Bankruptcy Code prohibits the assumption of defaulted leases unless the debtor shows that it has met 3 requirements found in §365(b)(1)(A)-(C). In this case, those requirements were: 1) cure of maintenance defaults at 400 Bourbon; 2) payment of A-Bar's attorney's fees between bankruptcy petition and lease assumption; and 3) BSI's showing that its history as a tenant isn't indicative of its future (adequate assurance of future performance), which the Fifth Circuit requires as "extremely fact specific".

The lease at 400 Bourbon couldn't have been assumed by the parties' *Agreed Order* because it only addressed one of the 3 requirements for lease assumption – <u>cure</u>. The parties' *Agreed Order* was nothing more than the parties' contractual definition of <u>how BSI would be entitled to a cure finding</u> (still only 1/3 of the assumption calculus).

Under the *Agreed Order*, BSI was required to: 1) immediately commence work on undisputed defaults; 2) participate in the agreed-upon refereed process to resolve disputed defaults; and 3) have all its work done by December 31, 2012. Because the *Agreed Order* was expressly (and suspensively) conditioned upon these three tasks, the bankruptcy judge's finding that they failed to complete their work by December 31, 2012 precludes them from any reliance on the *Agreed Order* as a sword to argue that somehow they assumed the 400 Bourbon Lease.

Rather, the judge's only factual finding in this matter, that BSI's work wasn't done by December 31, 2012, should go undisturbed under normal standards of review. It means BSI isn't entitled to a cure finding and therefore cannot assume the lease.

Additionally, because the payment of A-Bar's pecuniary damages (attorney's fees and costs) resulting from BSI's breaches is a prerequisite to assumption, for that reason also the lease cannot be considered assumed. It wasn't addressed in the *Agreed Order* and it hasn't yet taken place as a matter of fact.

Lastly, neither the *Agreed Order* nor the bankruptcy judge (at trial or in his ruling) addressed the final requirement of adequate assurance of future performance of the lease, the third and final requirement of lease assumption. Without this showing, BSI is also not entitled to lease assumption; in the Fifth Circuit this showing is crucial for a landlord whose commercial eviction proceedings in state court were interrupted by this bankruptcy.[112] BSI's delay and lack of cooperation in the cure effort precludes it from the benefit of the doubt in this matter.

---

[112] "Whether a debtor has given adequate assurance is extremely fact-specific." *In re Texas Health Enterprises Inc.*, 72 F. App'x 122, 126 (5th Cir. 2003).

The bankruptcy judge's ruling on lease assumption was no doubt influenced by the stage of the underlying Chapter 11. BSI has taken advantage of the fact that this bankruptcy is now well post-confirmation, arguing that an entire army of creditors would suffer if this lease isn't assumed. While a commercial reality, this doesn't relax the standards for lease assumption under the Bankruptcy Code or the parties' court-approved *Agreed Order*. Several creditors warned the bankruptcy court and all involved that confirmation was premature while BSI's leases were still unassumed. The delay in this matter is attributable only to BSI and it shouldn't have been able to benefit from its lack of cooperation and to this point. The bankruptcy judge shouldn't be permitted to disregard the parties' *Agreed Order* and § 365(b)(1) of the Bankruptcy Code simply because BSI was able to delay this hearing until a year post-confirmation.

## ARGUMENT

I.  **The bankruptcy judge <u>couldn't</u> have interpreted the *Agreed Order* to effect lease assumption *in toto*; only <u>one of the three</u> requirements under § 365(b)(1) of the Bankruptcy Code was even mentioned in the agreement.**

§ 365 of the Bankruptcy Code provided the starting point for the bankruptcy judge's analysis of the *Agreed Order*:

> (b)(1) [i]f there has been a default in an . . . unexpired lease of the debtor, the [debtor] **may not** assume such contract . . . **unless**, at the time of such assumption, the [debtor] –

That starting point is clearly <u>prohibitory</u> when the lease to be assumed is in default, as was the 400 Bourbon lease. 11 U.S.C. § 102(4) (when used in the Bankruptcy Code, "may not" is "prohibitive, and not permissive"). The strict prohibitory nature underscores the very purpose of § 365. "Strict adherence to the Code provisions governing assumption of con-

tracts might appear overly simplistic, but . . . the requirements . . . provide necessary safe-guards to parties **forced to maintain contractual relations with a reorganizing debtor.**" *In re Nat'l Gypsum Co.*, 208 F.3d 498, 512 (5th Cir. 2000); *Texas Importing Co. v. Banco Popular de Puerto Rico*, 360 F.2d 582 (5th Cir. 1966).

BSI was prohibited from assuming this lease until it had addressed <u>all 3 of the Code requirements</u>, which are:

> (A)   cure, or adequate assurance of prompt cure, of nonmonetary defaults;
>
> (B)   compensation, or adequate assurance of prompt compensation, of pecuniary losses caused by the defaults (attorney's fees and costs); and
>
> (C)   adequate assurance of future performance under the lease.

The *Agreed Order* didn't achieve this – it contained only BSI's promise to cure maintenance defaults under § 365(b)(1)(A). Thus, only 1/3 of BSI's assumption requirements were even <u>contemplated</u> by the *Agreed Order*. The *Agreed Order* can't as a matter of law effect lease assumption.

The bankruptcy judge, at other times, has held that absent the fulfilment of all assumption requirements, it may not approve a lease assumption even in an uncontested matter. *In re O'Neil Theatres, Inc.*, 257 B.R. 806 (Bankr. E.D. La. 2000)(Brown, J.).

The bankruptcy judge no doubt felt pressure to approve lease assumption. More than a year post-confirmation, lease assumption denial would present an obstacle to BSI's consummation. That possibility, though, doesn't permit the *Agreed Order* to be interpreted as anything other than an agreement concerning cure. It is an enforceable contract which has the power to effect 1/3 of lease assumption, no doubt – but without addressing the other 2/3 of lease assumption, it can't be said to stand for A-Bar's agreement on the entire matter.

The bankruptcy court's ruling indicates that A-Bar didn't address BSI's "assumption by consent" argument.[113] To the contrary, A-Bar produced each argument provided above in pre- and post-hearing written submissions – that until all three assumption requirements have been addressed by the parties and are ultimately approved by the court, no lease assumption is possible.[114] A-Bar also argued the issue at trial.[115]

In sum, the *Agreed Order* as a matter of law couldn't accomplish a full-scale lease assumption - § 365(b)(1) prohibits that without 3 distinct showings. The *Agreed Order* addressed only one one – cure.

II.    **The bankruptcy judge <u>shouldn't</u> have interpreted the *Agreed Order* as a full-blown lease assumption agreement. Waiver principles have little place in bankruptcy proceedings and A-Bar's 2-year opposition of the lease assumption makes the bankruptcy judge's acceptance of BSI's awkward, 11ᵗʰ hour "assumption by consent" argument factually, commercially, and practically unreasonable.**

The *Agreed Order* was clearly not an affirmative agreement on all 3 § 365(b)(1) requirements. <u>It was a cure agreement</u>. The question then becomes – can the bankruptcy judge rule that the *Agreed Order*'s silence as to the other 2 assumption requirements constituted A-Bar's waiver of its right to demand them?

The only explanation is that the bankruptcy judge found that the §365 provisions were nothing more than A-Bar's "rights to demand" and that waiver principles can permit this type of assumption. Consider the chart reproduced below:

---

[113] Bankr. R. 592:11.
[114] Bankr. R. 558:1-4, 583:4-5.
[115] Bankr. Transcript at R. 571:20, l. 21 - 571:24, l. 16; 572:173, l. 15 – 572:181, l. 10.



Shouldn't the party forbidden from assuming a breached lease (here, BSI) be required by the court to show how it meets the <u>exception</u> to § 365(b)(1)'s prohibition . . . <u>before</u> the assumption is approved by the court? That's what the Code indicates. And that's what the judge ruled at the trial – that BSI had the burden to show that it was entitled to lease assumption:

> MR. LILLY: Yes, Your Honor. But in conclusion I believe that each of those three affirmative requirements of 365 need to be addressed today and that Bourbon Saloon bears the burden. Thank you.
> THE COURT: Well, I have already ventured my opinion that they -- Bourbon Saloon bears the burden, so let's get started.[116]

---

[116] Transcript at Bankr. R. 571:24, ll. 10-16.

In this regard, the judge was right. § 365(b)(1) prohibits the assumption of a defaulted lease and before assumption could be approved, BSI bore the burden of showing that each of the three lease assumption requirements were satisfied. *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303 (5th Cir. 1985); *In re Diamond Mfg. Co., Inc.*, 164 B.R. 189 (Bankr. S.D.Ga. 1994).

<u>In this matter, 2 of the 3 requirements weren't addressed in the *Agreed Order*, they weren't addressed at trial, and they still haven't been addressed, even today.</u> These are statutory <u>prerequisites</u> – the only way around § 365(b)(1)'s prohibition of the assumption of a defaulted lease. *In re PRK Enterprises, Inc.*, 235 B.R. 597 (Bankr. E.D.Tex. 1999).

The bankruptcy judge's ruling, however, (that the *Agreed Order* accomplished lease assumption in full, despite its silence on 2/3 of the statute's requirements), must have been based on some sort of waiver principle. The ruling appears to hold that the party opposing assumption (here, A-Bar) was required every step of the way to force the debtor to make good on its § 365(b)(1)(A), (B), and (C) obligations – as though protecting three distinct rights (cure, attorney's fees, future performance assurance).

The notion that A-Bar even for a moment waived its right to oppose lease assumption isn't legally or factually supportable, primarily because waiver simply doesn't belong in bankruptcy lease assumption. *In re Senioris Enterprises, Inc.*, 70 B.R. 79, 81-82 (Bankr. N.D.Tex. 1987) (principles of waiver and estoppel have "very little play, if any" in the context of assumption or rejection requirements).

In Louisiana, a finding of A-Bar's waiver of its "right" (rather than BSI's duty) to attorney's fees and an adequate assurance of future performance showing under the Bankruptcy Code would have required proof of A-Bar's (1) actual intent to relinquish it, or (2)

36

conduct so inconsistent with the intent to enforce the right that it induces a reasonable belief that it relinquished the right. *Durham Sch. Servs., L.P. v. Sojourner Truth Acad.*, 2012 WL 2133672 at *4 (E.D.La. 2012) (Engelhardt, J.), citing *Steptore v. Masco Construction Co.*, 93–2064 (La.8/14/94); 643 So.2d 1213, 1216.

Here, A-Bar's eviction of BSI was interrupted by this bankruptcy. A-Bar has consistently maintained a costly opposition to BSI's lease assumption, and that opposition didn't change upon its agreement with BSI as to a defined cure scheme in the *Agreed Order*. The *Agreed Order* can't be interpreted to show that A-Bar somehow <u>waived</u> its right to demand what the Bankruptcy Code requires where it entered into a contract so clearly aimed at only <u>one aspect</u> of lease assumption.

The bankruptcy court and this Court on review are both charged with interpreting the *Agreed Order* in such a manner that it doesn't produce absurd results. The notion that a landlord whose eviction has been interrupted by a Chapter 11, and who has opposed lease assumption for 2 years, intended to abandon that fight by contractually defining § 365(b)(1)(A) cure violates some of Louisiana's most important interpretive guidelines. LA. CIV. CODE ANN. art. 2046. In any event, the *Agreed Order* simply doesn't satisfy § 365(b)(1)(A)-(C) – and A-Bar can't be said to have agreed to or waived things which were BSI's burden to show in advance of assumption.

III.   **The *Agreed Order* was really just the parties' contractual definition of how BSI could accomplish § 365(b)(1)(A) cure; BSI's right to a cure finding depended entirely upon its satisfaction of three conditions.**

As a practical matter, the *Agreed Order* was A-Bar's agreement forbear for 8 months and define what it expected of BSI's cure effort, and BSI in turn agreed that as of December

31, 2012, it would either be entitled to a cure finding (and thus, 1/3 satisfaction of what the Bankruptcy Code requires for lease assumption) or not.

The approval of the agreement was "subject to" its terms…which would provide A-Bar with adequate assurance of cure. That adequate assurance (and ultimately a cure finding at all) came with a deadline and some other conditions, though, as recognized at trial by the bankruptcy judge:

> I don't think it's totally accurate to say that the conditions were complied with -- that the question is whether the conditions were complied with providing for adequate assurance of the cure. I think it's broader than that. It's a question of even if it were held to be assumed but subject to suspensive conditions, I think -- subject to resolutory conditions, I think you have to show that those conditions took place, and I think the burden is on you, frankly.[117]

As spelled out in *Agreed Order*, BSI was to: 1) immediately commence on undisputed defaults; 2) participate in referee process to resolve disputes on still-disputed defaults; and 3) have all repairs accomplished by December 31, 2012.

No matter what it's found to be (an agreement regarding lease assumption *in toto* or just the parties' definition of "cure") the effectiveness of the *Agreed Order* was "subject to" these 3 requirements. The bankruptcy judge recognized this early on, but ruled quite differently in the end.

---

[117] Transcript at Bankr. R. 571:10, l. 21 – 11, l. 4.

IV.    The *Agreed Order* establishes the type of "mutually-acceptable performance crite-
ria" which the bankruptcy judge defined, in his 2005 *Crutcher-Tufts* ruling, as Lou-
isiana Civil Code Article 1767 suspensive conditions.

In streamlining the issues for trial, the parties were instructed by the bankruptcy
judge to determine whether the *Agreed Order* created a suspensive condition, the non-ful-
filment of which would entitled A-Bar to lease rejection; or whether the *Agreed Order* was
subject to a resolutory condition.[118]

The *Agreed Order* isn't tough to understand. The parties confected it themselves.
BSI wanted more time to do its repair work. A-Bar wanted a year-end completion date.
Both parties wanted to continue their use of the construction referee. They made an agree-
ment that BSI would be entitled to a cure finding "subject to" the performance of the terms
it contained.

Reference to the bankruptcy judge's own previous rulings, along with the Louisiana
Civil Code and its leading commentators, made it fairly clear that BSI's entitlement to a
cure finding would be subject to a suspensive condition (our Civil Code's equivalent of the
"condition precedent"). A suspensive condition is "an obligation which may not be en-
forced until the uncertain event occurs." LA. CIV. CODE ANN. art. 1767, ¶ 2.

The bankruptcy judge himself previously held that a contract where the effect of an
agreement depended upon "the achievement [by one party] of mutually acceptable perfor-
mance criteria" constituted a contract subject to a suspensive condition. *In re Crutcher-
Tufts Res., Inc.*, 347 B.R. 189, 194 (Bankr. E.D.La. 2005) *aff'd*, 504 F.3d 535 (5th Cir.
2007). In keeping with the notion of the suspensive condition, the Court wrote that "the
suspensive obligation may only be enforced when the uncertain event occurs." *Id*. In this

---

[118] Bankr. R. 512.

matter, the "uncertain event" was whether BSI would comply with the requirements of the *Agreed Order* – and have its repairs done by December 31, 2012. Those requirements (immediate commencement, refereed process participation, deadline) are precisely the type of "mutually acceptable performance criteria" the bankruptcy judge dealt with in *In re Crutcher-Tufts*.

The bankruptcy judge held that BSI didn't finish its work by the December 31, 2012 deadline.[119] That holding is more than the consolation the bankruptcy judge intended for A-Bar. It's a factual finding that one of (the most important, in fact) the conditions in the *Agreed Order* did not occur by the agreed-upon time.

Rather than holding that the suspensive condition, at that point, was considered to have failed, LA. CIV. CODE ANN. art. 1773, ¶ 1, the bankruptcy judge didn't address the fact that the *Agreed Order* was an agreement subject to a condition at all.

In fact, in the interim, the bankruptcy judge extended the cutoff for cure repairs, which not only contravenes settled law regarding the sanctity of bargained for consent judgments, it thwarts the purpose of the suspensive condition altogether by robbing A-Bar of the only benefit of its bargain. Alain Levasseur, "Effects of Conditional Obligations", *Louisiana Law of Obligations in General: A Precis* at § 2.2-B.2.A.1, CIVIL LAW PRECIS SERIES (Lexis Nexis 3d. ed. 2009):

> In the words of LSA-CC. Art. 1773 §1, if the condition is that an event shall occur within a fixed time and that time elapses without the occurrence of the event, the condition is considered to have failed. We are concerned here with the necessary occurrence of a positive condition within an express term, or fixed time. If that conditions fails to occur within the agreed time it

---

[119] Bankr. R. 592:15 (awarding attorney's fees because defaults remained as of December 31, 2012 cure deadline set forth in the *Agreed Order*).

> is then considered that the condition can no longer occur. **Under the specific circumstances, a court should have no right to extend the express term and, thereby, make it possible for the condition to occur.**

(**emphasis added**). The uncertain event (completion of repairs) didn't occur within the time stipulated (December 31, 2012). The bankruptcy judge no doubt recognized that BSI's failure to satisfy this conditions within the time in the *Agreed Order* was fatal to its cause. His ruling was silent as to the very conditions he recognized and ordered the parties to brief leading into trial.[120]

This Court should interpret and enforce the agreement as required by Louisiana law. BSI was not entitled to anything (assumption, cure, or otherwise) under the *Agreed Order* – its suspensive condition failed and was insusceptible of forgiveness by the judge's time extension.

**V.    As a matter of law, the bankruptcy judge had no basis to *sua sponte* undo the December 31, 2012 cure deadline in the parties' *Agreed Order*; settled law provides that the *Agreed Order* was not only the contract between the parties, it was also the bankruptcy court's order and a future-reaching injunction.**

This Court's *United States v. Willowridge Estates*, 2013 WL 3489864 (E.D. La. 2013) (Brown, J.) ruling is instructive on the issue of whether the bankruptcy judge should have altered the parties' agreed-upon 12/31/2012 cure deadline in the *Agreed Order*. <u>Absent a significant change in circumstances or law, there is no basis for altering a considered and bargained for consent decree</u>. In this situation, the parties were well on their way to preparing the matter for a trial on the December 31, 2012 deadline. There were no changes in circumstance and neither party requested the extension. There was no need for it.

---

[120] Bankr. R. 512.

The question of whether the bankruptcy judge was *sua sponte* permitted to stray from or alter the terms of the December 31, 2012 deadline in the *Agreed Order* is neither novel and it is not susceptible of any principled "minority view." Its answer, supplied by both this Court's and Fifth Circuit rulings, is <u>no</u>.

Under these circumstances, the bankruptcy judge couldn't replace the terms of a consent judgment with terms of his own. *Chisholm v. Greenstein*, 876 F.Supp.2d 709 (E.D.La. 2012) (Barbier, J.). Courts are constrained to the consent judgment's agreed-upon terms, "no matter how much of an improvement [departures from the existing terms] would make in effectuating the decree's goals." *Id.*, *citing United States v. Int'l Brotherhood of Teamsters*, 998 F.2d 1101, 1107 (2d Cir. 1993).

The bankruptcy judge's 60 day cure deadline extension was made without reason or request from either party. He wasn't permitted to read into obsolescence the parties' agreement that work would be completed by December 31, 2012. Instead, he was required to "honor the presumption that parties to a contract intend every clause to have some effect." *Chisom v. Jindal*, -- F.Supp.2d --, 2012 WL 3891594 (E.D.La. 2012) (Morgan, J.); *Baton Rouge Oil and Chem. Workers Union v. Exxonmobil Corp.*, 289 F.3d 373 (5th Cir. 2002).

The *Agreed Order's* drop-dead date was absolutely insusceptible of anything other than a plain reading – the bankruptcy judge was required enforce the December 31, 2012 deadline as written. *Chisom* at *11. The bankruptcy judge's *sua sponte* order that BSI was granted an additional 60 days to perform cure work contravenes this Court's view of the sanctity of bargained-for consent decrees and it presented the bankruptcy judge with the

moving target (a December 2012 and a February 2013 "cure deadline") predicted by A-Bar in its motion to modify the bankruptcy ruling.[121]

Although the bankruptcy judge comforted A-Bar that there would be no difference in the outcome at trial, the fact that he took evidence on work done in January, February, and March means there was – the December 31, 2012 deadline was entirely disregarded for the purposes of lease assumption.

**VIII.   The jurisprudential "substantial performance" or "substantial completion" standard the bankruptcy judge borrowed from Louisiana construction law has no application in the statutory world of bankruptcy lease assumption. The Bankruptcy Code and the *Agreed Order* both require cure of all defaults as a prerequisite to the approval of lease assumption; anything less and the debtor isn't entitled to assume.**

The bankruptcy judge did everything he could to permit assumption of this lease. He held that a contract addressing 1/3 of the Bankruptcy Code's requirements was "assumption by consent". He extended the cure deadlines *sua sponte*.

And he ignored the fact that every deadline set by the parties and the court was not met, or even close to being met – he attempted to do so by importing a jurisprudential standard applicable only to building contracts to hold that BSI "substantially cured" its defaults.

The law is clear, though. So is the *Agreed Order*.

The Bankruptcy Code requires that defaults be cured "at the time of assumption of such . . . lease". 11 U.S.C. § 365(b)(1)(A).

In this case, the parties <u>agreed</u> that BSI's promises in the *Agreed Order* would suffice as adequate assurance of cure of the maintenance defaults.[122] That adequate assurance,

---

[121] Bankr. R. 514; Transcript at Bankr. R. 596.
[122] Bankr. R. 449:3, ¶ 9.

however, had a deadline – the promise which constituted adequate assurance of cure failed
<u>as of December 31, 2012</u>.

As recognized early on by the bankruptcy judge, the *Agreed Order* was subject to a
condition[123] of some sort. The condition was a suspensive condition, as described *supra*.
The condition(s) failed (if not earlier), at least as of December 31, 2012 when BSI failed to
complete its work on time.[124]

The bankruptcy judge was correct in suggesting the unreasonableness of an argu-
ment that "everything had to be done by December 31, and if there's one wall that needs
to be painted that the lease is rejected".[125]

But that's not what happened. At the referee's inspection on February 18, 2013, he
founds as follows:

> That is not to say that I find that Bourbon Saloon has satisfied
> its minimum obligations to repair each item of work deter-
> mined to be its responsibility. It has not. While it has substan-
> tially performed most of the items of work for which it is re-
> sponsible, thereby satisfying its obligations for those items, it
> has failed substantially to perform certain others.

The "certain others" happened to be the highest dollar and most precarious situations[126] at
400 Bourbon. Masonry was estimated by A-Bar and BSI's contractors to be worth between
$45-55,000.[127] Windows were a job estimated to be worth $77,000 and $98,000.[128] Quite
clearly, even the work BSI had done up until mid-February still fell pretty far short of com-
pletion.

---

[123] Bankr. R. 512.
[124] Bankr. R. 592:15.
[125] Transcript at Bankr. R. 596:7, ll. 9-12.
[126] Bankr. Tr. Ex. 45.
[127] Statement Undisputed Facts at Bankr. R. 567, ¶¶ 46, 47.
[128] Statement Undisputed Facts at Bankr. R. 567, ¶¶ 63, 64.

Nevertheless, the bankruptcy judge imported a rule foreign to the Bankruptcy Code (and certainly foreign to the *Agreed Order*) when he ruled that "the debtor has made **significant enough** progress toward curing its non-monetary defaults"[129] and that the "cure efforts of the debtor . . . are **substantial enough**"[130] and whether "**substantial** cure"[131] was made by December 31, 2012 or whether BSI made "**substantial** repairs" after the February 18, 2013 inspection.[132]

In doing so, the judge varied varied wildly from the "unpainted wall" standard he articulated in February 2013.[133] In fact, "substantial performance" has nothing to do with the Bankruptcy Code – which requires that defaults must be cured at or before the time of assumption. 11 U.S.C. § 365(b)(1)(A).

Further, "substantial performance" or "substantial cure" isn't what the parties agreed to, either – in their *Agreed Order*. They agreed that all repairs would be done.

Substantial performance is a term of art. It's a Louisiana term of art. It's used to deny principals the ability to terminate a construction contract that has been largely performed – it limits them to damages. It's not applicable to the Bankruptcy Code or to the *Agreed Order*. Its limited utility has already been demonstrated by the late Judge Alvin Rubin:

> We note, however, that in relying on Louisiana Civil Code article 2014 as authority for the [defense of substantial performance], the district court drew an analogy to building-construction cases. The official comments to article 2014 state that "it does not change the law" and that it is "consistent with . . . the accepted jurisprudential rule that a building contract may

---

[129] Bankr. R. 592:1.
[130] Bankr. R. 592:11.
[131] Bankr. R. 592:12.
[132] Bankr. R. 592:12.
[133] Transcript at Bankr. R. 596:7, ll. 9-18.

> not be dissolved after substantial performance has been ren-
> dered". **The parties have cited no cases or treatises and we have
> found none that support the application of the doctrine to any
> contract other than one for construction or the clearing of land.
> As a federal court sitting in diversity jurisdiction, the district
> court should have hesitated, as we would, to extend Louisiana
> law beyond the boundaries currently established in the state's
> own courts.**

*Morris v. Homco Intern., Inc.*, 853 F.2d 337, 343 (5th Cir. 1988) (Rubin, J.) (**emphasis**

**added**). Judge Rubin's analysis is correct. Neither substantial performance nor Civil Code

Article 2014 permits the bankruptcy judge to ignore the plain language of the Bankruptcy

Code and the *Agreed Order* – the bankruptcy judge's "unpainted wall" standard might be

acceptable under the Code or the *Agreed Order*, but leaving 20-30% (masonry/win-

dows/leaks) of the contemplated cure work improperly done, according to the referee after

an inspection performed nearly 90 days after the *Agreed Order*'s deadline had passed –

cannot. The "substantial performance" concept is a contract defense simply unavailable to

BSI in a contested lease assumption governed by § 365 and the *Agreed Order*.

IX.    **Neither lease termination nor eviction was before the bankruptcy judge; this was a
       contested lease assumption and the judge was guided exclusively by the three re-
       quirements in § 365(b)(1)(A)-(C); his appreciation of A-Bar's rights or motives as a
       landlord were immaterial in his decision to approve or deny lease assumption.**

Time and again, the bankruptcy judge referred in his ruling to A-Bar's motives for

opposing lease assumption. Those motives are irrelevant unless A-Bar acted in bad faith,

which not even BSI has insinuated.

The fact that the denial of lease assumption could benefit A-Bar should have been of

no moment in the bankruptcy judge's blind application of the Code and the *Agreed Order*

to the facts in this matter. That also wasn't the case – where the bankruptcy judge spent

several pages[134] describing the undesired effects or windfall afforded A-Bar if this lease assumption wasn't approved.

The bankruptcy judge also placed great and inappropriate emphasis on the supposed effect of lease assumption denial on the overall consummation of BSI's plan of reorganization. The delay in bringing this matter to trial was strictly attributable to BSI. Lease assumption could and should have been accomplished or tried before the bankruptcy plan was confirmed - BSI and the creditors were all warned by counsel for creditor Goldking prior to plan confirmation that without secured assumptions of two of its three assets, confirmation was premature.[135] As a result of this delay, the bankruptcy judge was forced to consider the stark reality of a proper application of the Bankruptcy Code and the *Agreed Order* – that it would result in the denial of one of BSI's leases.

A-Bar calls for the proper application of the Bankruptcy Code and the *Agreed Order* in this matter – there was a December 31, 2012 deadline for cure. It wasn't met, even by the bankruptcy judge's factual findings. There is nowhere in bankruptcy law a provision allowing for "substantial cure", particularly in the face of an agreed deadline like the one in this matter.

Cure either was, or it wasn't, on December 31, 2012.

**X.   A § 365(b)(1)(B) prerequisite to BSI's lease assumption was its compensation of A-Bar's pecuniary damages caused by BSI breach (attorney's fees and costs); lease assumption can't be approved without the payment of these damages, which run from the time of the bankruptcy petition until the time the lease assumption is approved.**

A landlord can only be forced by the bankruptcy court to continue his lease with his bankrupt tenant by the satisfaction, by consent or otherwise, of § 365(b)(1)(A)-(C) of the

---

[134] Bankr. R. 592:13-15.
[135] Bankr. R. 343.

Bankruptcy Code. The bankruptcy judge held that this happened when the parties signed the *Agreed Order* on May 15, 2012, but the bankruptcy judge failed to award A-Bar with its attorney's fees which led up to the purported assumption.

Assuming *arguendo* that the bankruptcy judge is right, A-Bar is owed attorney's fees under § 365(b)(1)(B) of the Bankruptcy Code from the time of the bankruptcy petition until the "assumption by consent" (May 15, 2012), in addition to the attorney's fees it was awarded for BSI's "post-assumption breach" of the *Agreed Order* beginning at December 31, 2012 and lasting through the time of the ruling under appeal (October 11, 2013).

## CONCLUSION

For the reasons articulated in A-Bar's original merits brief, this Court should:

1) reverse the bankruptcy court's ruling that the *Agreed Order* effected lease assumption in May 2012; and

2) rule that because the bankruptcy judge found as a matter of fact that the lease defaults weren't cured by the *Agreed Order's* December 31, 2012 deadline, BSI's lease assumption should be denied.

In the alternative, A-Bar respectfully requests that the Court:

3) reverse the bankruptcy court's ruling that the *Agreed Order* effected lease assumption in May 2012; and remand the issue for

4) the bankruptcy court's consideration of the facts against the agreed-upon and court-ordered December 31, 2012 deadline in order to make its determination as to § 365(b)(1)(A) cure; and

5) with instructions to the bankruptcy court to award A-Bar the proper amount of attorney's fees and costs under § 365(b)(1)(B) of the Bankruptcy Code; that is, those fees/costs it incurred post-bankruptcy petition through the approval of lease assumption; and

6)   with instructions to the bankruptcy court to, for the first time, address the issue of adequate assurance of future performance of the lease, required by § 365(b)(1)(C) of the Bankruptcy Code and the Fifth Circuit.[136]

In the event the Court finds the lease was properly assumed, A-Bar requests that proper attorney's fees be awarded, namely those it incurred post-bankruptcy petition up through lease assumption, as well as any post-assumption attorney's fees identified and awarded by the bankruptcy court in its ruling.

Respectfully submitted,

_____
Andrew T. Lilly (La. #32559)
715 Girod Street, Suite 200
New Orleans, Louisiana 70130
telephone:    (504) 812-6388
facsimile:    (504) 539-4180
e-mail:        andrew@atlpllc.com

*Attorney for Appellant, The Absinthe Bar, L.L.C.*

## CERTIFICATE OF SERVICE

I certify that the foregoing was served upon all counsel of record, all by operation of the District Court's CM/ECF system, this 21st day of March, 2014.

_____
Andrew T. Lilly

---

[136] "Whether a debtor has given adequate assurance is extremely fact-specific." *In re Texas Health Enterprises Inc.*, 72 F. App'x 122, 126 (5th Cir. 2003).

49