# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In Re:                                                     CIVIL ACTION
**BOURBON SALOON, INCORPORATED**

                                                           **CASE NO. 14-395**
                                                                **c/w 14-398**

                                                           **SECTION: "G"(2)**

## ORDER AND REASONS

Before the Court is The Absinthe Bar, L.L.C.'s ("A-Bar") appeal from the United States Bankruptcy Court's October 11, 2013 order denying A-Bar's motion for lease rejection of 400 Bourbon Street. Also before the Court is Bourbon Saloon, Inc.'s ("BSI" or "debtor") cross-appeal from the Bankruptcy Court's October 11, 2013 order granting A-Bar fourteen days to file a statement of attorney's fees and costs incurred by it after December 31, 2012. Also before the Court is BSI's "Motion to Dismiss Cross-Appeal without Prejudice."[1] Considering the briefs filed by the parties, the statements made at oral argument, the record and the applicable law, for the reasons that follow, the Court will affirm the Bankruptcy Court's order and deny BSI's "Motion to Dismiss Cross-Appeal without Prejudice.".

## I. Background

### A. The Lease of 400 Bourbon Street

On July 24, 1997, BSI entered a lease with A-Bar of 400 Bourbon Street for a term of twenty years, which is set to expire on October 31, 2017.[2] On May 12, 2010, A-Bar filed an eviction

---

[1] Rec. Doc. 13.

[2] Bankruptcy Rec. Doc. 592 at 2. The lease includes an option to renew for another twenty years to October 31, 2037. *Id.*

proceeding against BSI in state court for its defaults under the repair and maintenance provisions of the lease.[3] On August 19, 2010, the state court entered a Consent Judgment obligating BSI to make all repairs to the building specified by David K. Rester, Esq. and Farr & Huston Architects.[4]

### B. The Chapter 11 Petition and Motion to Assume the Lease

On May 12, 2011, BSI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[5] On August 10, 2011, BSI filed a motion to assume the lease of 400 Bourbon Street pursuant to 11 U.S.C. § 365.[6] On August 23, 2011, A-Bar filed an opposition to BSI's motion to assume the lease, arguing that there were monetary and nonmonetary defaults on the lease.[7] Because the parties did not agree as to the scope, cost or allocation of financial responsibilities for work to cure the maintenance and repair defaults, the Bankruptcy Court approved the hiring of Danny Shaw (the "Referee") to determine the disputed issues of the scope of work, payment responsibilities and adequacy of the work.[8] On March 26, 2012, the Bankruptcy Court confirmed BSI's Amended Chapter 11 Plan of Reorganization.[9]

### C. The May 15, 2012 Agreed Order

On May 15, 2012, the Bankruptcy Court entered an Agreed Order on a Motion to Assume

---

[3] Bankruptcy Rec. Doc. 529 at 2.

[4] *Id.* at 3.

[5] Bankruptcy Rec. Doc. 1.

[6] Bankruptcy Rec. Doc. 107.

[7] Bankruptcy Rec. Doc. 115.

[8] Bankruptcy Rec. Doc. 295.

[9] Bankruptcy Rec. Doc. 411.

Lease (the "Agreed Order").[10] The Agreed Order noted that BSI was in default under the lease on certain of its non-monetary obligations.[11] The parties did not dispute that defaults existed concerning the maintenance obligation with respect to conditions cited in:

1) the pre-petition August 19, 2010 Consent Judgment;

2) the Vieux Carre Commission ('VCC') citations dated June 11, 2011, September 1, 2011, and February 16, 2012; and

3) the April 4, 2012 letters from the New Orleans Department of Safety and Permits (Building Inspection Division) and Department of Safety and Permits (Zoning Administration Division).[12]

The Agreed Order stated: "IT IS ORDERED that the Reorganized Debtor's assumption of the lease of the premises at 400 Bourbon is approved, subject to the terms of this Order, which provide Absinthe Bar with adequate assurance of cure as required by Section 365 of the Bankruptcy Code."[13] It further ordered BSI to "immediately commence work on those undisputed maintenance defaults listed in the Consent Judgment, the VCC and Department of Safety and Permits citations, and any other citations extant."[14] It provided that when a maintenance item was determined to be the responsibility of BSI, BSI would pay the resulting contractor obligations as provided in the construction contract and no liens would be permitted to be filed against the property.[15] It set a

---

[10] Bankruptcy Rec. Doc. 449.

[11] *Id.* at 1.

[12] *Id.* at 2.

[13] *Id.* at 3.

[14] *Id.*

[15] *Id.*

December 31, 2012 deadline for cure of all maintenance and repair defaults.[16] Finally, it ordered that the Bankruptcy Court maintained jurisdiction to review decisions by the Referee and to enforce the terms of the Agreed Order.[17]

### D. The Motion to Reject the Lease

After the December 31, 2012 deadline for completing the repairs to the building passed and BSI had not completed the work agreed to in the Agreed Order, A-Bar filed a motion with the Bankruptcy Court requesting that it reject the lease.[18] On January 24, 2013, the Bankruptcy Court issued an order setting both the motion for lease rejection and the motion to assume the lease for hearing.[19] The Bankruptcy Judge set a deadline of February 28, 2013, for BSI to complete any and all maintenance and cure issues remaining due.[20] Prior to the hearing, the Referee filed a report finding that BSI had "substantially performed those items previously found to be its responsibility, with the exception of the following items: . . . 1) exterior masonry; 2) windows; 3) men's closet on first floor; 4) condenser platform in courtyard; and 5) structural engineer certifications of structural integrity of various building elements and repair efforts."[21]

### E. The October 11, 2013 Order

The Bankruptcy Court conducted a hearing on March 26-27, 2013, and issued an Order on

---

[16] *Id.*

[17] *Id.*

[18] Bankruptcy Rec. Doc. 497.

[19] Bankruptcy Rec. Doc. 512.

[20] *Id.*

[21] Bankruptcy Rec. Doc. 592 at 4–5.

4

October 11, 2013.[22] First, the Bankruptcy Judge evaluated each of the unfinished repairs identified by the Referee.[23] He concluded that the evidence presented at trial established that the leak in the men's bathroom, condenser platform and windows were fixed following the Referee's last inspection.[24] The Bankruptcy Judge found the masonry work performed was adequate because it was accepted by the Vieux Carre Commission ("VCC").[25] Finally, he noted that the parties agreed that any issues regarding the structural engineer certification of structural integrity were resolved.[26]

Turning to the legal issues presented, the Bankruptcy Judge found that the lease was assumed by BSI and the assumption was approved by the Agreed Order.[27] He noted that the Agreed Order specifically stated that it approved the assumption of the lease.[28] Accordingly, he found the lease was assumed at the time that court approval of the Agreed Order was obtained.[29]

The Bankruptcy Judge also found that BSI had adequately cured its non-monetary defaults on the lease.[30] Evaluating this issue, the Bankruptcy Judge stated:

> Once the lease assumption is approved the court is then concerned with whether the nonmonetary defaults existing as of the date of the assumption have been cured or can be cured within a reasonable time. There is no hard and fast rule and the time table set by the parties by agreement or in a court order is subject to the court's

---

[22] *Id.* at 1.

[23] *Id.* at 6–9.

[24] *Id.* at 7–8.

[25] *Id.* at 8–9.

[26] *Id.* at 9.

[27] *Id.* at 10.

[28] *Id.* at 11.

[29] *Id.* (citing *In re Mushroom Transportation Company, Inc.*, 78 B.R. 754, 761 (Bankr.E.D.Pa. 1987)).

[30] *Id.*

discretion as to whether the cure efforts of the debtor – particularly as to non-monetary defaults – are substantial enough to deny A-Bar its sought after relief, cancellation of the long term lease.[31]

The Bankruptcy Judge opined that much of A-Bar's evidence showed that the substantial cure of the defaults was not completed by either the December 31, 2012 deadline or the February 28, 2013 deadline, but BSI continued to make repairs.[32] He noted that BSI had set aside $30,000 to $40,000 for future repairs, which he opined demonstrated "that whatever failures or delays the debtor may be responsible for in the past, it is now making a good faith effort to comply with the lease obligations concerning the maintenance and repair of the building."[33] He noted that the December 31, 2012 deadline was only six and a half months after the parties agreed upon and the Bankruptcy Court approved the assumption of the lease.[34] He opined that "the process for getting permits to perform the required work on a building in the French Quarter is very lengthy."[35] "In light of the fact that [BSI had] spent over $300,000 to make repairs and ha[d] set aside another $30 - $40,000," the Bankruptcy Judge found it was "not unreasonable to allow the debtor to complete any remaining repairs after that December 31, 2012 date and thereby allow the debtor to complete the plan of reorganization."[36]

The Bankruptcy Judge found that A-Bar, as the owner of the building, was "setting high standards for the repairs it expects the debtor to make under the terms of the lease and adhering to

---

[31] *Id.*

[32] *Id.* at 12.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.* at 12–13.

its stringent position that failure to meet that standard gives it the right to dissolve the lease."[37] He noted that A-Bar would stand to gain substantially if allowed to evict BSI, but "the effect on the reorganized debtor and the creditors would be a devastating failure of the plan."[38] He found that "the terms of the lease called only for good repair and condition, not the perfection that A-Bar insists upon."[39] He noted that the standard for repair called for by the VCC was high, and found it significant that the demands of the VCC had been satisfied.[40]

The Bankruptcy Judge cited Louisiana Civil Code Article 2014, which states: "A contract may not be dissolved when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially impair the interest of the obligee."[41] He also cited Louisiana Fourth Circuit Court of Appeals caselaw stating, "The trial court has discretion to decline dissolution where it finds that the breach of the lease is not major or where the breach was not the fault of the lessor or where the lessor was in good faith."[42] The Bankruptcy Judge found that BSI had rendered a substantial part of the performance required by the Agreed Order as it had spent over $300,000 making repairs to the building, performed the work to the satisfaction of the VCC, cleared all outstanding VCC complaints against the building and satisfied the City of New Orleans Safety and Permits violation letter.[43] He also found that A-Bar's primary interest was dissolving the lease, and

---

[37] *Id.* at 13.

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.* at 14.

[42] *Id.* (*citing Karno v. Fein*, 846 So.2d 105, 110 (La.App. 4 Cir. 2003); *Karno v. Bourbon Burlesque Club Inc.*, 931 So.2d 1111 (La.App. 4 Cir. 2006)).

[43] *Id.*

"[a]ny other interests of A-Bar are not substantially impaired if the debtor continues to pay the rent and make all repairs called for by the lease."[44] Finally, he noted that under the lease, A-Bar could make the repairs and invoice BSI for the costs.[45]

The Bankruptcy Judge noted that Section 365(b)(1)(B) of the Bankruptcy Code requires that the debtor compensate the nondebtor "for any actual pecuniary loss resulting from default."[46] He found that A-Bar incurred damages of attorney's fees and costs for litigation related to the defaults that remained as of the December 31, 2012 cure deadline set forth in the Agreed Order.[47] He noted that Section 365(b)(1)(B) does not create an independent right to an attorney fees award, but it "recognizes a landlord's right to compensation for actual pecuniary losses resulting from debtor's default under an unexpired lease assumption."[48] He found that attorney fees qualify as "actual pecuniary losses" when state law would recognize them as such.[49] He noted that the lease provided for attorney fees incurred by the lessor to enforce or defend any of the lessor's rights or remedies.[50]

The Bankruptcy Judge noted that attorney fees would be first priority administrative expenses under 11 U.S.C. § 503, "if the actual and necessary damages: 1) occur post-petition; and 2) arose as a result of actions taken by the trustee (the debtor in possession in this case) that

---

[44] *Id.*

[45] *Id.* at 15.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.* (*citing In re Westview 74th Street Drug Corp.*, 59 B.R. 747 (Bankr. S.D.N.Y. 1986)).

[50] *Id.*

benefitted the estate."[51] He found that the first element was satisfied because "A-Bar incurred attorney's fees and costs as a result of the post-petition litigation brought after the December 31, 2012 deadline to force the debtor to finish remedying the nonmonetary defaults under the lease that was assumed by the Agreed Order."[52] The Bankruptcy Judge found that the second element was met because the lease assumption was an action taken by BSI to benefit the estate.[53] Accordingly, he found that attorney fees would be first priority administrative expenses and requested that A-Bar file, within fourteen days, a statement of attorney's fees and costs incurred by it after December 31, 2012.[54]

On October 22, 2013, A-Bar filed a timely Notice of Appeal.[55] On November 4, 2013, BSI timely filed a cross-appeal.[56] A-Bar filed an appellate brief on March 21, 2014,[57] and BSI filed an appellate brief on April 4, 2014.[58] A-Bar and BSI both filed reply briefs on May 2, 2014.[59] On June 19, 2014, BSI filed a "Motion to Dismiss Cross-Appeal without Prejudice."[60] A-Bar filed an

---

[51] *Id.* at 15–16 (*citing In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001)).

[52] *Id.* at 16.

[53] *Id.*

[54] *Id.*

[55] Bankruptcy Rec. Doc. 597.

[56] Bankruptcy Rec. Doc. 597.

[57] Rec. Doc. 5.

[58] Rec. Doc. 6.

[59] Rec. Docs. 7 and 8.

[60] Rec. Doc. 13.

objection to the motion on July 3, 2014.[61] The Court conducted oral argument on July 23, 2014.[62]

## II. Issues Raised on Appeal

### A. A-Bar's Appellate Brief

#### 1. Assumption of the Lease

A-Bar argues that the lease of 400 Bourbon could not have been assumed by the parties' Agreed Order because the Agreed Order only addressed cure, one of three requirements for lease assumption of defaulted leases under 11 U.S.C. § 365(b)(1).[63] It asserts that the "starting point" for assumptions of defaulted leases is "clearly prohibitory" because Section 365(b) provides that a defaulted lease "may not [be] assume[d]" unless all of the requirements are met.[64] A-Bar quotes Fifth Circuit caselaw stating, "Strict adherence to the Code provisions governing assumption of contracts might appear overly simplistic, but . . . the requirements . . . provide necessary safeguards to parties forced to maintain contractual relations with a reorganizing debtor."[65] It argues that the Bankruptcy Judge "has held that absent the fulfilment of all assumption requirements, it may not approve lease assumption even in an uncontested matter."[66]

A-Bar argues that the Bankruptcy Judge should not have interpreted the Agreed Order as a lease assumption agreement because it was not an affirmative agreement on all three Section

---

[61] Rec. Doc. 20.

[62] Rec. Doc. 22.

[63] Rec. Doc. 5 at 36.

[64] *Id.*

[65] *Id.* at 36–37 (quoting *In re Nat'l Gypsum Co.*, 208 F.3d 498, 512 (5th Cir. 2000); *Texas Importing Co. v. Banco Popular de Puerto Rico*, 360 F.2d 582 (5th Cir. 1966)).

[66] *Id.* (citing *In re O'Neil Theaters, Inc.*, 257 B.R. 806 (Bankr. E.D. La. 2000)(Brown, J.)).

365(b)(1) requirements.[67] It asserts that BSI "bore the burden of showing that each of the three lease assumption requirements were satisfied."[68] It argues that the three requirements for assumption of a defaulted lease "are statutory prerequisites."[69]

### 2. Waiver

A-Bar contends that the Bankruptcy Judge's ruling "appears to hold that the party opposing assumption (here, A-Bar) was required every step of the way to force the debtor to make good on its § 365(b)(1)(A), (B), and (C) obligations."[70] It argues that "[t]he notion that A-Bar even for a moment waived its right to oppose lease assumption isn't legally or factually supportable, primarily because waiver simply doesn't belong in bankruptcy lease assumption."[71]  A-Bar contends that under Louisiana law, the Bankruptcy Judge could not find that it waived its "right" to attorney's fees and an adequate assurance of future performance without proof of "(1) actual intent to relinquish it, or (2) conduct so inconsistent with the intent to enforce the right that it induces a reasonable belief that it relinquished the right."[72] A-Bar asserts that its eviction of BSI was interrupted by the bankruptcy proceeding, and it "consistently maintained a costly opposition to BSI's lease

---

[67] *Id.* at 38.

[68] *Id.* at 40 (citing *Richmond Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303 (5th Cir. 1985); *In re Diamond Mfg. Co., Inc.*, 164 B.R. 189 (Bankr. S.D. Ga. 1994)).

[69] *Id.* (citing *In re PRK Enterprises, Inc.*, 235 B.R. 597 (Bankr. E.D. Tx. 1999)).

[70] *Id.* at 40.

[71] *Id.* (citing *In re Senioris Enterprises, Inc.*, 70 B.R. 79, 81-82 (Bankr. N.D.Tex. 1987) (principles of waiver and estoppel have "very little play, if any" in the context of assumption or rejection requirements)).

[72] *Id.* at 40–41 (citing *Durham Sch. Servs., L.P. v. Sojourner Truth Acad.*, 2012 WL 2133672 at *4 (E.D.La. 2012) (Engelhardt, J.), citing *Steptore v. Masco Construction Co.*, 93–2064 (La.8/14/94); 643 So.2d 1213, 1216).

assumption."[73]  Accordingly, A-Bar argues that the Agreed Order "can't be interpreted to show that A-Bar somehow waived its right to demand what the Bankruptcy Code requires where it entered into a contract so clearly aimed at only one aspect of lease assumption."[74] It contends that such an interpretation would produce absurd results in violation Louisiana Civil Code article 2046.[75]

A-Bar contends that the Agreed Order was simply "the parties contractual definition of how BSI could accomplish § 365(b)(1)(A) cure."[76] It asserts that the Agreed Order required BSI to: "1) immediately commence on undisputed defaults; 2) participate in referee process to resolve disputes on still-disputed defaults; and 3) have all repairs accomplished by December 31, 2012."[77]  It argues that "the effectiveness of the Agreed Order was 'subject to' these 3 requirements.[78]

### 3. Suspensive Condition

A-Bar asserts that "BSI's entitlement to a cure finding would be subject to a suspensive condition."[79] It asserts that "a contract where the effect of an agreement depended upon 'the achievement [by one party] of mutually acceptable performance criteria' constituted a contract subject to a suspensive condition," and "the suspensive obligation may only be enforced when the

---

[73] *Id.* at 41.

[74] *Id.*

[75] *Id.*

[76] *Id.*

[77] *Id.* at 42.

[78] *Id.*

[79] *Id.* at 43.

uncertain event occurs."[80] A-Bar contends that here the "uncertain event" was wether BSI would comply with the requirements of the Agreed Order.[81] It argues that BSI did not complete the work by the December 31, 2012 deadline and is, therefore, "not entitled to anything (assumption, cure, or otherwise under the Agreed Order."[82] At oral argument, A-Bar asserted that the Bankruptcy Judge made a factual finding that the December 31, 2012 cure deadline was not met, and, therefore, the Agreed Order must fail because the suspensive condition was not met.[83]

A-Bar asserts that the Bankruptcy Judge erred in extending the cure deadline from the Agreed Order because "[a]bsent a significant change in circumstances or law, there is no basis for altering the considered and bargained for consent decree."[84]A-Bar asserts that "[a]lthough the bankruptcy judge comforted A-Bar that there would be no difference in the outcome at trial, the fact that he took evidence on work done in January, February, and March means there was – the December 31, 2012 deadline was entirely disregarded for the purposes of lease assumption."[85]

### 4. Substantial Performance

A-Bar argues that the Bankruptcy Court erred in using the doctrine of "substantial completion" in determining whether BSI had cured the maintenance defects at 400 Bourbon, instead

---

[80] *Id.* (quoting *In re Crutcher-Tufts Res., Inc.*, 347 B.R. 189, 194 (Bankr. E.D.La. 2005) aff'd, 504 F.3d 535 (5th Cir. 2007)).

[81] *Id.* at 44.

[82] *Id.* at 45.

[83] Rec. Doc. 23 at 17.

[84] Rec. Doc. 5 at 45–46 (citing *Chisholm v. Greenstein*, 876 F.Supp.2d 709 (E.D.La. 2012) (Barbier, J.); *Chisom v. Jindal*, – F.Supp.2d –, 2012 WL 3891594 (E.D.La. 2012) (Morgan, J.); *Baton Rouge Oil and Chem. Workers Union v. Exxonmobil Corp.*, 289 F.3d 373 (5th Cir. 2002)).

[85] *Id.* at 47.

of requiring cure of all defaults as required by the Bankruptcy Code and the Agreed Order.[86] A-Bar asserts that BSI left twenty to thirty percent of the contemplated cure work improperly done.[87] Further, it argues that the "substantial performance" concept is a contract defense simply unavailable to BSI in a contested lease assumption governed by § 365 and the Agreed Order."[88] A-Bar asserts that its motives are irrelevant unless it acted in bad faith, which it contends BSI has not asserted here.[89]

### 5. Attorney's Fees

Alternatively, if the lease was assumed in the Agreed Order, A-Bar contends Section 365(b)(1)(B) makes compensation of A-Bar's pecuniary damages caused by BSI breach a prerequisite to BSI's lease assumption.[90] Accordingly, A-Bar asserts it is "owed attorney's fees under § 365(b)(1)(B) of the Bankruptcy Code from the time of the bankruptcy petition until the 'assumption by consent' (May 15, 2012), in addition to the attorney's fees it was awarded for BSI's 'post-assumption breach' of the Agreed Order beginning at December 31, 2012 and lasting through the time of the ruling under appeal (October 11, 2013)."[91]

---

[86] *Id.*

[87] *Id.* at 50.

[88] *Id.*

[89] *Id.*

[90] *Id.* at 51.

[91] *Id.* at 52.

### B. BSI's Appellate Brief

#### 1. Assumption of the Lease

BSI argues that the Agreed Order "expressly settled the Motion to Assume," by stating:

IT IS ORDERED that the Reorganized Debtor's assumption of the Lease of the premises at 400 Bourbon is approved, subject to the terms of this Order, which provide Absinthe Bar with adequate assurance of cure as required by Section 365 of the Bankruptcy Code.[92]

It notes that the Agreed Order "allowed for future questions as to 'the exact scope, costs, and allocation of financial responsibility for further work to cure maintenance defaults,' to be submitted to the referee."[93] BSI asserts that the Agreed Order cites the following sources to define its obligation to cure maintenance defaults: (1) the Consent Judgment; (2) the VCC Notices of Violation; and (3) April 4, 2012 letters from the New Orleans Department of Safety and Permits.[94] It argues that the maintenance defaults in the Consent Judgment were essentially the same as those cited in the VCC Notices of Violation.[95] BSI contends that the repairs related to Hurricane Katrina were completed before the date of the Agreed Order.[96] Therefore, BSI asserts that it "understood the scope of work required by the Agreed Order to be the cure of the VCC Notices of Violation."[97] It contends that A-Bar had a "different, and far broader, view of the cure obligation, but it failed to

---

[92] Rec. Doc. 6 at 18.

[93] Id.

[94] Id.

[95] Id.

[96] Id.

[97] Id. at 19.

describe that view adequately."[98] It argues that at the time of the trial in this matter, it had spent over $300,000 on repairs.[99] BSI contends that it proved at trial that each of the deficiencies enumerated in the Referee's report "were addressed and remedied promptly following the release of the Referee's report."[100] Accordingly, BSI asserts that all of its cure obligations imposed in the Agreed Order were satisfied.[101]

BSI argues that the plan of reorganization will fail if the lease is lost, causing harm to all of the creditors in this bankruptcy case.[102] It asserts a finding that its construction efforts failed to cure the defaults would result in an "unjustified windfall" to A-Bar because:

> (1) [A-Bar] receives the benefit of over $300,000 worth of repairs paid for out of the Debtor's limited post-confirmation cash reserves, which funds would otherwise be available to satisfy the other creditors under the Plan, and (2) [A-Bar] may enter into a new lease for a higher rent with Oceana Grill (the next door neighbor), or some other third party. The pre-assumption defaults, if any remained as of the hearing date below, did not justify that result to the Bankruptcy Court.[103]

BSI argues that the Bankruptcy Court's October 11, 2013 Order was correct because the only two issues for it to decide were (1) whether the lease was assumed in the Agreed Order and, if so, (2) whether BSI cured the pre-assumption defaults, as required by the Agreed Order.[104] According to BSI, because the Bankruptcy Court decided in the affirmative on both of these issues, the Court

---

[98] *Id.*

[99] *Id.*

[100] *Id.* at 20.

[101] *Id.* at 23.

[102] *Id.* at 29.

[103] *Id.*

[104] *Id.* at 32.

16

correctly granted judgment in favor of BSI.[105] BSI points out that the Bankruptcy Court heard two days of testimony, reviewed numerous documents and found that the necessary repairs were made to cure maintenance defects, thereby satisfying BSI's cure obligations under the Agreed Order.[106] BSI argues that the Bankruptcy Court's factual findings in this regard are not clearly erroneous and its legal conclusion that the substantial performance doctrine applies in this case is correct.[107]

Regarding A-Bar's argument that the lease was not assumed because the Agreed Order did not address all three requirements for lease assumption under Section 365(b)(1), BSI argues that the Agreed Order on its face unambiguously provides for the assumption of the lease.[108] BSI asserts that a lease is assumed under Section 365 once bankruptcy court approval is obtained.[109] It argues that federal courts interpret consent judgments using general principles of contract interpretation.[110] It contends that Agreed Orders are interpreted under Louisiana law.[111] BSI cites Louisiana Civil Code article 2046, arguing that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[112] It contends that Section 365(b)(1)(A) allows the debtor a period of time following assumption to cure any

---

[105] *Id.*

[106] *Id.*

[107] *Id.*

[108] *Id.* at 33.

[109] *Id.* (citing *In re Mushroom Transp. Co.*, 78 B.R. 754, 761 (Bank. E.D. Pa. 1987)).

[110] *Id.* (citing *Dean v. City of Shreveport*, 438 F.3d 448, 460 (5th Cir. 2006)).

[111] *Id.* (citing *In re Robertson*, 203 F.3d 855, 860 (5th Cir. 2000)).

[112] *Id.* at 33–34.

17

defaults.[113] BSI asserts that "the terms of the Agreed Order are clear, unambiguous and lead to no absurd results."[114]

Moreover, because the Agreed Order is final and non-appealable, BSI asserts that "*res judicata* principles preclude A-Bar from re-litigating the issues that were integral to the assumption of the Lease by [BSI]."[115] BSI argues that the Fifth Circuit "has long recognized that a consent judgment is a judgment on the merits, and normally is 'given the finality accorded under the rules of claim preclusion.'"[116] BSI argues that when a consent judgment is final, the remaining elements of the Fifth Circuit's traditional res judicata analysis apply.[117] It contends that those additional elements are: "(1) the parties are identical in the two actions; (2) the prior judgment was rendered by a court of competent jurisdiction; and (3) the same claim or cause of action is involved in both cases."[118] BSI asserts that the remainder of the Fifth Circuit's res judicata analysis is satisfied here.[119]

### 2. Suspensive Condition

Regarding A-Bar's argument that BSI's cure obligation created a suspensive condition and BSI did not meet the December 31, 2012 deadline set forth in the Agreed Order for completion of

---

[113] *Id*. at 35 (citing *In re Mushroom Transp. Co.*, 78 B.R. 754, 761 (Bank. E.D. Pa. 1987)).

[114] *Id*.

[115] *Id*. at 33, 36.

[116] *Id*. (citing *Matter of W. Texas Marketing Corp.*, 12 F.3d 497, 500 (5th Cir. 1994) (quoting *Russell v. SunAm. Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992) (citing *Kaspar Wire Works, Inc. v. Leco Engn'r and Mach. Inc.*, 575 F.2d 530, 538 (5th Cir. 1978)).

[117] *Id*. at 37.

[118] *Id*. (citing *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (citing *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 330 (5th Cir. 2007)).

[119] *Id*. at 37–38.

repairs, BSI argues the "cure" requirements set forth in the Agreed Order were to be performed following the assumption of the Lease, and not before.[120] BSI asserts that under Louisiana law "every provision of a contract must be interpreted in light of the other provisions in order to give each provision the meaning suggested by the contract as a whole."[121]

Further, it contends that a contract provision that is "susceptible of different meanings must be interpreted with a meaning that renders it effective and not one that renders it ineffective."[122] BSI argues that A-Bar's "interpretation of the Agreed Order does violence to these bedrock principles of contract interpretation," because the Agreed Order unequivocally states that the "assumption of the Lease . . . is approved."[123] It asserts that the parties did not state any suspensive conditions to the assumption of the lease.[124] BSI notes that Section 365 of the Bankruptcy Code provides that at the time of assumption the debtor must cure or provide adequate assurance that the debtor will promptly cure such defaults.[125] It contends that the Agreed Order "expressed a clear intent to connote future performance, after assumption."[126] Accordingly, BSI argues that A-Bar's "suspensive condition construction violates both the terms of § 365(b)(1) and Louisiana principles of contract interpretation by rendering both the 'assumption is approved' and the 'adequate assurance of cure'

---

[120] *Id.* at 39.

[121] *Id.* (citing *Matter of Liljeberg Enter. Inc.*, 304 F.3d 410, 443 (5th Cir. 2002)).

[122] *Id.* (quoting La. Civ. Code art. 2049).

[123] *Id.*

[124] *Id.*

[125] *Id.* at 40.

[126] *Id.*

language meaningless."[127]

### 3. Substantial Performance

BSI asserts that its post assumption cure obligations are governed by state law.[128] It contends that under Louisiana law a court may refuse to dissolve a lease where the lessee has substantially performed its obligations.[129] It notes that Louisiana law also disfavors dissolution of leases.[130] BSI asserts "that the Bankruptcy Court, as a trial court has discretion to decline dissolution of a lease when it finds that the breach of the lease is not major or where the lessor is not in good faith."[131] BSI notes that bankruptcy courts are courts of equity, and "the Bankruptcy Court was well within its purview to examine [A-Bar's] motives."[132] However, it contends that A-Bar's motives were not the dispositive factor in the Bankruptcy Court's decision.[133]

### 4. Attorney's Fees

Finally, BSI contends that the attorney's fee issue is not ripe for appeal because it is not a final disposition of a discrete dispute because the Bankruptcy Court has not determined the amount

---

[127] *Id.* at 41.

[128] *Id.* at 42 (citing *Wainer v. A.J. Equities, Ltd.*, 984 F.2d 679, 683 (5th Cir. 1993)).

[129] *Id.* at 41–44 (citing *Karno v. Bourbon Burlesque Club, Inc.*, 2004-0241 (La. App. 4 Cir. 5/10/06), 931 So. 2d 1111, 1115–16; *Karno v. Joseph Fein Caterer, Inc.*, 2002-1269 (La. App. 4 Cir. 4/16/03), 846 So. 2d 105, writ denied, 2003-1358 (La. 9/19/03), 853 So. 2d 642)).

[130] *Id.* at 45 (citing *Quinn Properties Inc. v. Sabine River Realty, Inc.*, 95-1717 (La. App. 3 Cir. 5/29/96), 676 So. 2d 639); *Stoltz v. McConnell*, 202 So.2d 451, 457 (La. App. 4 Cir.), writ denied, 203 So.2d 559 (La. 1967); *Arbo v. Jankowski*, 39 So.2d 458, 460 (La. App. Orleans 1949)).

[131] *Id.* at 46.

[132] *Id.* at 47.

[133] *Id.* at 48.

of A-Bar's entitlement to fees.[134] Therefore, BSI requests that the Court dismiss its Notice of Appeal, without prejudice, because it is premature.[135]

### C. A-Bar's Reply Brief

On May 2, 2014, A-Bar filed a reply brief. A-Bar notes that it could not finalize its 2010 state court eviction proceeding against BSI because BSI filed a bankruptcy petition in May 2011.[136] It asserts that unless the three requirements of Section 365(b)(1) have been satisfied, there has been no lease assumption.[137] It contends that "[t]he Agreed Order was merely a binding agreement as to what 'cure' would mean in this matter. A-Bar at no point dropped its opposition to lease assumption."[138] It asserts that the parties could not address the other two components of the lease assumption before they litigated the cure issue.[139] It contends that "[i]t wasn't until a week before the hearing that BSI, for the first time, even hinted that it felt the lease had already been assumed – that the Agreed Order wasn't just a cure agreement, that it was an agreement that this matter was over."[140] A-Bar asserts that the pretrial order directed the parties to address whether the Agreed Order contained a suspensive condition or a resolutory condition, but the Bankruptcy Judge's ruling was "completely silent on the issue of the suspensive condition."[141]

---

[134] *Id*. at 48–49.

[135] *Id*. at 49.

[136] Rec. Doc. 7 at 5.

[137] *Id*.

[138] *Id*. at 8.

[139] *Id*.

[140] *Id*. at 9.

[141] *Id*. at 9–10.

A-Bar states that it will not address BSI's *res judicata* argument because it "presupposes that assumption took place in May 2012 by the Agreed Order."[142] A-Bar agrees with BSI's position "that there was nothing for BSI to appeal in terms of attorney's fees."[143]

A-Bar asserts that the Agreed Order "was entered in the context of a §365(b)(1) bankruptcy lease assumption motion" and does not address the other two requirements imposed by the Bankruptcy Code.[144] It contends that the Court must "do more than look at one discrete section of the Agreed Order for its answer. Particularly in light of the nature of what § 365 and the Agreed Order are, those charged with interpreting the contract should take great care to find that the party seeking assumption has met its burden of proving entitlement, requirement by requirement."[145] It argues that the plain language of the Bankruptcy Code requires that all three requirements be addressed before lease assumption can be approved by the Bankruptcy Court.[146] It asserts that "[t]he Agreed Order could not have settled assumption because it didn't address each of the Bankruptcy Code's requirements (§ 365(b)(1)(A)-(C)) for the assumption of a defaulted lease."[147]

A-Bar asserts that BSI, as the party moving to assume a defaulted lease, bears the burden of showing that the requirements have been met.[148] It contends that "[n]othing, not even the

---

[142] *Id.* at 10.

[143] *Id.*

[144] *Id.* at 11.

[145] *Id.*

[146] *Id.*

[147] *Id.* at 12.

[148] *Id.* at 13–14 (citing *In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309–10 (5th Cir. 1985)).

"assumption . . . approved" language in the Agreed Order washes away BSI's affirmative obligations under the Bankruptcy Code."[149] It cites *In re Mushroom Transportation Co., Inc.*, arguing that there "the bankruptcy court refused to read an unwritten agreement into a consent decree."[150] It asserts:

> [S]ilence on 2 of the 3 assumption requirements shouldn't be interpreted to mean that A-Bar and BSI intended to settle the entire lease assumption based on their written agreement which mentioned cure only. This is particularly the case where:
>
>> 1) the parties for more than a year after litigated the contested lease assumption motion, spending significant amounts to take the matter to trial;
>>
>> 2) the only other lease in this matter was "assumed by consent": was resolved by an agreement with addressed each of the 3 lease assumption requirements expressly required by § 365(b)(1) of the Bankruptcy Code.[151]

Alternatively, A-Bar asserts that the conditions expressed in the Agreed Order were not met.[152] It argues that the entire Agreed Order depended upon "the achievement [by one party] of mutually acceptable performance criteria," making it a contract subject to a suspensive condition.[153] It notes that the Bankruptcy Judge found that BSI did not finish its work by the December 31, 2012 deadline, but "[r]ather than holding that the suspensive condition, at that point, was considered to have failed . . . the bankruptcy judge didn't address the fact that the Agreed Order was an agreement

---

[149] *Id.* at 14.

[150] *Id.* at 15 (citing 78 B.R. 754, 761–62 (Bankr. E.D. Pa. 1987)).

[151] *Id.*

[152] *Id.* at 16.

[153] *Id.* at 17 (citing *In re Crutcher-Tufts Res., Inc.*, 347 B.R. 189, 194 (Bankr. E.D.La. 2005) (Brown, J.) aff'd, 504 F.3d 535 (5th Cir. 2007)).

subject to a condition at all."[154] A-Bar asserts that the Bankruptcy Judge improperly applied equitable considerations and Louisiana law eviction principles.[155] It contends that "[i]n seeking to do equity, the bankruptcy judge has obliterated the requirements of § 365(b)(1) of the Bankruptcy Code," which it asserts violated long-standing Fifth Circuit law dictating strict adherence to the Bankruptcy Code.[156]

### D. BSI's Reply Brief

On May 4, 2014, BSI filed a reply brief incorporating the points and authorities set forth in its original brief.[157] BSI argued that because A-Bar "has failed to specify any legal or factual errors in the Bankruptcy Court's October 11, 2013, Memorandum Opinion and Order which would justify overturning the Judgment, [BSI] respectfully requests that this Court deny [A-Bar's] appeal and affirm the Bankruptcy Court Judgment."[158]

### E. BSI's Motion to Dismiss Cross-Appeal Without Prejudice

BSI asserts that its cross-appeal should be dismissed as premature because the attorney's fees, which are the subject of the appeal, are "not ripe for appeal because the amount of those fees has not been determined yet by the Bankruptcy Court."[159] BSI notes that Federal Rule of Bankruptcy Procedure 8001(c)(2) provides that "[a]n appeal may also be dismissed on motion of the appellant

---

[154] *Id.*

[155] *Id.* at 18.

[156] *Id.* at 19–20 (citing *In re Nat'l Gypsum Co.*, 208 F.3d 498, 512 (5th Cir. 2000); *Texas Importing Co. v. Banco Popular de Puerto Rico*, 360 F.2d 582 (5th Cir. 1966)).

[157] Rec. Doc. 8 at 4.

[158] *Id.*

[159] Rec. Doc. 13-1 at 1.

on terms and conditions fixed by the district court or bankruptcy appellate panel."[160] It asserts that a voluntary dismissal may be achieved without prejudice.[161]

BSI notes that after A-Bar filed its notice of appeal, the Bankruptcy Court delayed the determination of the amount of attorney's fees until after the underlying appeal is decided.[162] BSI argues that "[i]f a claim is rendered administrative expense status, the court then must determine the amount allowable as administrative expense."[163] It contends a bankruptcy court's order awarding attorney's fees is not ripe for appeal until this determination is made.[164] Therefore, BSI argues that the issue of the award of attorney's fees as an administrative expense will not become ripe unless and until A-Bar's appeal is resolved and the Bankruptcy Court has determined the amount owed by BSI as an administrative expense.[165]  Accordingly, BSI requests that the Court grant its motion to dismiss voluntarily its cross-appeal, without prejudice, in order to preserve for a later time its right to appeal, if necessary.[166]

---

[160] *Id.* at 3–4.

[161] *Id.* at 4 (citing *In re Woodman*, 698 F.3d 1263, 1266 (10th Cir. 2012); *Rodriguez-Borges v. Rodriguez*, 2012 WL 92557 (D. P.R. Jan. 11, 2012)).

[162] *Id.* at 4–5.

[163] *Id.* at 5 (citing *In re Williams*, 246 B.R. 591, 594, n.4 (8th Cir. 1999); *In re TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1420 (5th Cir. 1992) ("[T]he amount to be allowed as an administrative expense must be measured in dollars and cents.")).

[164] *Id.* (citing *In re Emergency Beacon Corp.*, 52 B.R. 979, 984-85 (S.D.N.Y. 1985); *In re Commodore Corp.*, 70 B.R. 543 (Bankr. N.D. Ind. 1987)).

[165]  *Id.*

[166] *Id.*

*F. A-Bar's Opposition to BSI's Motion to Dismiss Cross-Appeal Without Prejudice*

A-Bar contends BSI noticed its appeal on two issues – "whether the attorney's fee award was error ('propriety') and whether the administrative expense status given to the award was error ('classification')."[167] It argues BSI based its motion to dismiss for lack of ripeness, based solely on an issue it contends BSI has not appealed, the amount of attorney's fees ("quantum").[168] A-Bar contends the Bankruptcy Court's ruling on attorney's fees and their administrative expense status is final.[169] It argues the bankruptcy judge's award of attorney's fees under § 365 and his classification of them as administrative expenses under § 503 are final under the Fifth Circuit's approach toward "bankruptcy finality."[170] A-Bar contends the Fifth Circuit's recent ruling in *Colbert v. Brennan* would prohibit BSI from refiling its appeal if it is voluntarily dismissed.[171]

## III. Jurisdiction

The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1), which authorizes appellate review of final orders, judgments and decrees of a United States Bankruptcy Court entered consistent with 28 U.S.C. § 157.[172] In appeals from bankruptcy courts, district courts sit as an appellate court.[173]

---

[167] Rec. Doc. 20 at 1.

[168] *Id*. at 2.

[169] *Id*. at 6 (citing *In re ASARCO, L.L.C.*, 650 F.3d 593, 599–600 (5th Cir. 2011)).

[170] *Id*.

[171] *Id*. at 5. (citing *Colbert v. Brennan*, 2014 WL 1876519, *4 (5th Cir. 2014)).

[172] 28 U.S.C. § 158(a)(1).

[173] 28 U.S.C. § 1334(b).

## IV. Standard of Review

A district court reviews a bankruptcy court's conclusions of law *de novo*, findings of fact for clear error, and mixed questions of law and fact *de novo*.[174] A district court may affirm, reverse or modify a bankruptcy court's ruling, or remand the case for further proceedings.[175]

## V. Discussion

### A. Assumption of the Lease

#### 1. Applicable Law

"The Bankruptcy Code provides special rules for the treatment of executory contracts and unexpired leases during a Chapter 11 reorganization."[176] Section 365 of the Bankruptcy Code allows "the trustee, subject to the [bankruptcy] court's approval, [to] assume or reject any executory contract or unexpired lease of the debtor."[177] "An assumed lease or contract will remain in effect through and then after the completion of the reorganization."[178] "[T]he act of assumption must be grounded, at least in part, in the conclusion that maintenance of the contract is more beneficial to the estate than doing without the other party's services."[179]

Section 365(b)(1) addresses assumption of contracts and unexpired leases where there has been a default. It provides:

---

[174] *In re Nat'l Gypsum Co.,* 208 F.3d 498, 504 (5th Cir. 2000).

[175] Fed. R. Bankr. P. 8013.

[176] *In re National Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000) (citing 11 U.S.C. § 365).

[177] 11 U.S.C. § 365

[178] *In re National Gypsum Co.*, 208 F.3d at 505.

[179] *Id.*

27

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee–

> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;

> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

> (C) provides adequate assurance of future performance under such contract or lease.[180]

The Fifth Circuit has explained that Section 365 "provides a means whereby a debtor can force others to continue to do business with it when the bankruptcy filing might otherwise make them reluctant to do so."[181] Accordingly, the Fifth Circuit has stated that the section "serves the purpose of making the debtor's rehabilitation more likely."[182]

## 2. The Requirements for Lease Assumption

---

[180] 11 U.S.C. § 365(b)(1).

[181] *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1310 (1985).

[182] *Id.*

BSI asserts that the lease was assumed by the Agreed Order. A-Bar argues that the lease could not have been assumed by the Agreed Order because the Agreed Order only addressed one of the three requirements for lease assumption of a defaulted lease. A-Bar argues that the text of Section 365(b) is prohibitory because it provides that the trustee may not assume a defaulted lease unless the requirements of Section 365(b)(1) are met. A-Bar cites *In re National Gypsum Co.* to support its position that the strict prohibitory nature of Section 365 underscores the purpose of the statute. There, the Fifth Circuit stated that "[s]trict adherence to the Code provisions governing assumption of contracts might appear overly simplistic, but . . . the requirements of court approval and a hearing after notice to interested parties provide necessary safeguards to parties forced to maintain contractual relations with a reorganized debtor."[183] A-Bar correctly asserts that assumption of a lease under Section 365 requires court approval and notice to interested parties. However, the Court finds the holding of *In re National Gypsum Co.* inapplicable here because the requirements of court approval and notice to interested parties were met in this case.

A-Bar cites no authority to support its position that the Agreed Order must address all three Section 365(b)(1) requirements.[184] Contrary to A-Bar's position, bankruptcy courts have found that a defaulted lease is assumed following court approval of the parties agreement, where the agreement did not address all three requirements of Section 365(b)(1). The bankruptcy court in *In re Leon's Casual Co., Inc.* entered a consent order that did not address the debtor's cure obligations.[185]

---

[183] *In re National Gypsum Co.*, 208 F.3d at 512.

[184] A-Bar cites *In re O'Neil Theatres, Inc.*, arguing that the Bankruptcy Judge Previously held that absent the fulfilment of all assumption requirements, it may not approve lease assumption. 257 B.R. 806 (Bankr. E.D. La. 2000). However, this case only addresses lease rejection and does not address the requirements for assumption of a defaulted lease as A-Bar contends. *See id.*

[185] *See In re Leon's Casuals Co., Inc.*, 122 B.R. 768, 756–57 (Bank. S.D. Ala. 1990).

Nonetheless, the bankruptcy court found that the debtor was responsible for cure obligations because the lessor did not waive its right to cure.[186] Accordingly, because A-Bar has cited no authority to support its position, and because the Court has been unable to locate any, the Court will not extend the law to require that an agreed order address all three requirements of Section 365(b)(1).

### 3. Contract Interpretation

A-Bar argues that the Agreed Order did not assume the lease, while BSI asserts that the lease was assumed by the Agreed Order. "When interpreting a consent decree, general principles of contract interpretation govern."[187] Both parties agree that Louisiana contract law governs the interpretation of the Agreed Order.[188] Under Louisiana law, "[i]nterpretation of a contract is the determination of the common intent of the parties."[189] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[190] "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."[191] The United States Fifth Circuit Court of Appeals has noted that under Louisiana law "[a] contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one

---

[186] *Id.*

[187] *Dean v. City of Shreveport*, 438 F.3d 448, 460 (5th Cir. 2006) (citing *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 349 (5th Cir. 1998)).

[188] Rec. Doc. 5 at 41; Rec. Doc. 6 at 33–34.

[189] LA. CIV. CODE art. 2045.

[190] LA. CIV. CODE art. 2046.

[191] LA. CIV. CODE art. 2050.

party can create a dispute in hindsight."[192]

A-Bar's argument ignores the clear language of the Agreed Order, which states, "IT IS ORDERED that the Reorganized Debtor's assumption of the Lease of the premises at 400 Bourbon is approved, subject to the terms of this Order."[193] Here, the words of the Agreed Order are clear and explicit, providing that the "assumption of the Lease of the premises at 400 Bourbon is approved." Further, this interpretation does not lead to absurd consequences.

"Unless the court approves of a different arrangement, a lease is assumed once court approval is obtained."[194] A defaulted lease may be assumed prior to resolving all cure obligations so long as there is adequate assurance of prompt cure.[195] The Fifth Circuit has held that "'the question whether a lease should be rejected . . . is one of business judgment.'"[196] "As long as assumption of a lease appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to assume the lease should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code. . ."[197] Here, the parties expressly agreed to the assumption of the lease, and the Bankruptcy Court approved the assumption of the lease by entering the Agreed Order.  Accordingly, on *de novo* review, the

---

[192] *Amoco Production Co. v. Texas Meridian Resources Exploration, Inc.*, 180 F.3d 664, 668–669 (5th Cir.1999) (quoting *Texas E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir.1998)).

[193] Bankruptcy Rec. Doc. 449 at 3.

[194] *In re Mushroom Transportation Company, Inc.*, 78 B.R. 754, 761 (Bankr. E.D.Pa. 1987).

[195] *Id.* (citing *Collier on Bankruptcy*, ¶ 365.04, at 365–37 (15th ed. 1987) ("Providing 'adequate assurance' of a prompt cure 'is a substitute for the taking of the action.'"

[196] *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (citing *Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.*, 318 U.S. 523, 550, 63 S.Ct. 727, 742, 87 L.Ed. 959 (1943)).

[197] *Id.*

Court finds that the Agreed Order assumed the lease.

### 4. Suspensive Condition

A-Bar also argues that the Agreed Order was subject to a suspensive condition. BSI contends this argument is without merit because it ignores the plain language of the Agreed Order. The Louisiana Civil Code defines a conditional obligation as "one dependent on an uncertain event."[198] "If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive."[199] "Conditions may be either expressed in a stipulation or implied by the law, the nature of the contract, or the intent of the parties."[200]

A-Bar contends that here the "uncertain event" was whether BSI would comply with the requirements of the Agreed Order. It argues that BSI did not complete the work by the December 31, 2012 deadline and is, therefore, "not entitled to anything (assumption, cure, or otherwise under the Agreed Order."[201] At oral argument, A-Bar asserted that the Bankruptcy Judge made a factual finding that the December 31, 2012 cure deadline was not met, and, therefore, the Agreed Order must fail because the suspensive condition was not met.[202]

The Agreed Order states: "IT IS ORDERED that the Reorganized Debtor's assumption of the lease of the premises at 400 Bourbon is approved, subject to the terms of this Order, which provide Absinthe Bar with adequate assurance of cure as required by Section 365 of the Bankruptcy

---

[198] LA. CIV. CODE art. 1767.

[199] Id.

[200] LA. CIV. CODE art. 1768.

[201] Rec. Doc. 5 at 45.

[202] Rec. Doc. 23 at 17.

Code."[203] Under Louisiana law "every provision of a contract must be interpreted in light of the other provisions in order to give each provision the meaning suggested by the contract as a whole."[204] A contract provision that is "susceptible of different meanings must be interpreted with a meaning that renders it effective and not one that renders it ineffective."[205] Here, interpreting the cure obligation as a suspensive condition would render the "assumption . . . is approved" and "adequate assurance of cure" language meaningless. Section 365(b)(1)(A) provides that a defaulted lease may be assumed if the trustee cures, or provides adequate assurance that the trustee will promptly cure such defaults.[206] Accordingly, Section 365(b)(1)(A) allows the debtor a period of time following assumption to cure any defaults, where the debtor has provided adequate assurance of cure.[207] The express language of the contract evidences the parties' intent to assume the lease and for BSI to fulfill its cure obligations following assumption. A-Bar has presented no evidence showing that the parties intended the contract to be subject to a suspensive condition.

Further, the Court notes that Section 365 "serves the purpose of making the debtor's rehabilitation more likely."[208] If the Agreed Order did not assume the lease, BSI would have been obligated to complete the work without any assurance that the lease was assumed. Such a finding would be contrary to the purpose of Section 365 as it would make BSI's rehabilitation less likely.

---

[203] *Id.* at 3.

[204] *In re Liljeberg Enter. Inc.*, 304 F.3d 410, 443 (5th Cir. 2002).

[205] LA. CIV. CODE art. 2049.

[206] 11 U.S.C. § 365(b)(1)(A).

[207] *Concerto Software, Inc. v. Citaquest Intern., Inc.*, 290 B.R. 448, 453 (D. Maine 2003) (citing *In re Mushroom Transp. Co.*, 78 B.R. 754, 761 (Bank. E.D. Pa. 1987)).

[208] *Richmond Leasing Co.*, 762 F.2d at 1310.

Accordingly, the Court finds that the Agreed Order was not subject to a suspensive condition.

## C. Cure of Defaults and Substantial Performance

A-Bar argues that the Bankruptcy Court erred in using the doctrine of substantial performance in determining whether BSI had cured the maintenance defects at 400 Bourbon, instead of requiring cure of all defaults as required by the Bankruptcy Code and the Agreed Order. A-Bar also asserts that the Bankruptcy Judge erred in extending the cure deadline. BSI argues that the Bankruptcy Court correctly applied the doctrine of substantial performance. The Agreed Order set December 31, 2012 as the cure deadline. After that deadline passed, A-Bar filed a motion with the Bankruptcy Court requesting that it reject the lease.[209] On January 24, 2013, the Bankruptcy Court issued an order setting a deadline of February 28, 2013, for BSI to complete any and all maintenance and cure issues remaining due.[210]

For the reasons discussed above, the Court affirms the Bankruptcy Judge's holding that the Agreed Order assumed the lease. "Once a lease has been assumed, the rights of the parties are governed by state law unless there are contrary provisions in the Bankruptcy Code."[211] Here, the Bankruptcy Judge applied Louisiana law in determining whether BSI had fulfilled its cure obligations as required by the Agreed Order. Louisiana Civil Code Article 2014 provides that "[a] contract may not be dissolved when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially impair the interest of the obligee." "The trial court has discretion to decline dissolution where it finds that the breach of the lease is not major or where

---

[209] Bankruptcy Rec. Doc. 497.

[210] Bankruptcy Rec. Doc. 512.

[211] *Wainer v. A.J. Equities, Ltd.*, 984 F.2d 679, 683 (5th Cir. 1993)

34

the breach was not the fault of the lessor or where the lessor was in good faith."[212]

The Bankruptcy Judge found that BSI had rendered a substantial part of the performance required by the Agreed Order as it had spent over $300,000 making repairs to the building, performed the work to the satisfaction of the VCC, cleared all outstanding VCC complaints against the building and satisfied the City of New Orleans Safety and Permits violation letter. He also found that A-Bar's primary interest was dissolving the lease, and any other interests of A-Bar are not substantially impaired if the debtor continues to pay the rent and make all repairs called for by the lease. Finally, he noted that under the lease, A-Bar could make the repairs and invoice BSI for the costs. A-Bar has presented no evidence to show that these factual findings are clearly erroneous. Because Louisiana law allows courts to decline to dissolve a lease where the breach is not major and where the lessor was in good faith, the Court finds that the Bankruptcy Court did not err in applying the doctrine of substantial performance.

Even if the Bankruptcy Judge erred in applying the doctrine of substantial performance, A-Bar would not be entitled to rejection of the lease. Courts have held that a delay in fulfilling a cure obligation following assumption of a lease does not "open any escape hatch by which [the lessor] could have 'dis-assumed' the . . . lease."[213] Rather, "the principal consequence attending [the debtor's] tardy cure payment was the creation of a potential administrative claim against the estate for monetary damages."[214] Accordingly, BSI's failure to fulfill its cure obligations prior to the

---

[212] *Karno v. Fein*, 846 So.2d 105, 110 (La.App. 4 Cir. 2003); *Karno v. Bourbon Burlesque Club Inc.*, 931 So.2d 1111 (La.App. 4 Cir. 2006).

[213] *In re F& M Distributors, Inc.*, 202 F.3d 268 *8 (6th Cir. 2000) (citing *In re Mushroom Transportation Company, Inc.*, 78 B.R. 754, 761 (Bankr. E.D.Pa. 1987)).

[214] *Id.*

deadline established in the Agreed Order does not entitle A-Bar to a finding that the lease should be rejected or "dis-assumed." Instead, A-Bar is entitled to an administrative claim against the estate for monetary damages resulting from BSI's failure to meet the cure deadline. Accordingly, on *de novo* review, the Court finds that the Bankruptcy Judge properly held that A-Bar was entitled to attorney's fees and costs resulting from BSI's failure to meet the December 31, 2012 cure deadline. It is of no moment that the Bankruptcy Court considered the work performed by BSI after the deadline because, when the Bankruptcy Court evaluates A-Bar's entitlement to attorney's fees and costs, it will be entitled to costs resulting from BSI's failure to meet the cure deadline.

### D. Attorney's Fees

#### 1. Fees Following the December 31, 2012 Cure Deadline

BSI filed a cross-appeal challenging the award of attorney's fees in this case. BSI then filed a "Motion to Dismiss Cross-Appeal Without Prejudice" arguing that its cross-appeal was premature because the amount of attorney's fees had not been determined yet by the Bankruptcy Court. A-Bar contends that the Bankruptcy Court's ruling on attorney's fees and their administrative expense status is final. The Bankruptcy Court has not yet determined the extent of A-Bar's entitlement to fees, but he did determine that the fees would be first priority administrative expenses under 11 U.S.C. § 503. Accordingly, the Court finds that these discrete disputes — (1) A-Bar's entitlement to attorney's fees; and (2) the classification of the attorney's fees as an administrative expense — are final.[215]

For the reasons discussed above, the Court finds that A-Bar is entitled to attorney's fees and

---

[215] *See In re ASARCO, L.L.C.*, 650 F.3d 599, 600 (5th Cir. 2011) (In the Fifth Circuit "[a]n appealed bankruptcy order will be considered final if it constitutes either a final determination of the rights of the parties to secure the relief they seek, or a final disposition of a discrete dispute within the larger bankruptcy case.").

costs resulting from BSI's failure to meet the cure deadline. Attorney fees are considered first priority administrative expenses under 11 U.S.C. § 503, if the actual and necessary damages: 1) occur post-petition; and 2) arose as a result of actions taken by the trustee or the debtor in possession that benefitted the estate."[216] The Bankruptcy Judge found the first element was satisfied because "A-Bar incurred attorney's fees and costs as a result of the post-petition litigation brought after the December 31, 2012 cure deadline."[217] He found that the second element was met because the lease assumption was an action taken by BSI to benefit the estate.[218] Accordingly, he found that attorney fees would be first priority administrative expenses. BSI presents no argument as to any error in these findings. Accordingly, on *de novo* review, the Court finds that A-Bar is entitled to attorney's fees and costs, and those items are first priority administrative expenses.

### 2. Waiver of Fees Preceding the May 15, 2012 Agreed Order

A-Bar asserts it is owed attorney's fees from the time of the bankruptcy petition until May 15, 2012. BSI does not specifically address this argument. A-Bar argues that the Bankruptcy Judge improperly held that it had waived its right to attorney's fees and adequate assurance of future performance, although this Court cannot find in the Bankruptcy Court's Order or in the transcript below where he made such a finding. A-Bar correctly asserts, however, that under Louisiana law "[w]aiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a

---

[216] *In re Jack/Wade Drilling, Inc.*, 258 F.3d 385, 387 (5th Cir. 2001).

[217] Bankruptcy Rec. Doc. 592 at 16.

[218] *Id.*

reasonable belief that it has been relinquished."[219] A-Bar argues that there is no proof of: (1) its intent to waive its right to attorney's fees and an adequate assurance of future performance; or (2) conduct so inconsistent with the intent to enforce the right.

The Bankruptcy Judge's Order does not appear to address whether A-Bar waived its right to attorney's fees and adequate assurance of future performance for the time period preceding the Agreed Order. At lease one other bankruptcy court has held that a party does not waive its rights under Section 365(b)(1) where the agreement contained no express waiver.[220] Here, there is no evidence before this Court of A-Bar's intent to waive its right to attorney's fees and an adequate assurance of future performance or conduct inconsistent with the intent to enforce these rights. Therefore, the Court finds that the Bankruptcy Court erred in failing to address A-Bar's entitlement to attorney's fees and costs preceding the May 15, 2012 Agreed Order. Accordingly, it is ordered that when awarding attorney's fees and costs, the Bankruptcy Court is also to address the issue of whether A-Bar is entitled to attorney's fees or costs for the time period preceding the May 15, 2012 Agreed Order.[221]

---

[219] *Steptore v. Masco Const. Co., Inc.*, 93-2064 (La. 8/18/94); 643 So. 2d 1213, 1216.

[220] *See In re Leon's Casuals Co., Inc.*, 122 B.R. 768, 771 (Bank. S.D. Ala. 1990) (stating that under Alabama law "[t]he parties' agreement contains no express waiver of the right to cure on its face. The contract 'expressly conditioned' the lessor's acceptance on the Debtor's payment of September rent and keeping current on future rent, but it does not expressly waive the Movant's right to cure under § 365.").

[221] The issue of attorney's fees was raised by both the parties and the Bankruptcy Judge during the March 26-27, 2013 hearing. *See* Bankruptcy Rec. Doc. 572 at 174–76, 182, 186. However, the October 11, 2013 Order only addresses attorney's fees incurred after the December 31, 2012 cure deadline. It does not address whether the Agreed Order waived A-Bar's right to seek attorney's fees for the time period preceding the Agreed Order.

## VI. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that United States Bankruptcy Court's October 11, 2013 order is **AFFIRMED IN PART AND REMANDED IN PART**.

**IT IS FURTHER ORDERED** that the October 11, 2013 order is affirmed regarding its decision that the lease was assumed and that attorney's fees and costs are due.

**IT IS FURTHER ORDERED** that this matter is remanded for consideration by the Bankruptcy Court as to whether A-Bar is entitled to attorney's fees or costs for the time period preceding the May 15, 2012 Agreed Order.

**IT IS FURTHER ORDERED** that BSI's "Motion to Dismiss Cross-Appeal Without Prejudice" is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this  18th   day of March, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**